**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DANIEL R. LOZIER, II,** | |
| **Plaintiff,** | |
| **vs.** | **Case No.: 3:18-cv-03077-SEM-TSH** |
| **QUINCY UNIVERSITY CORPORATION, CHRISTINE TRACY, SAM LATHROP, MARK BELL, and BRIAN HOLZGRAFE,** | |
| **Defendants.** | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT QUINCY UNIVERSITY CORPORATION'S MOTION TO DISMISS WITH MEMORANDUM OF LAW**

NOW COMES Plaintiff, by his attorneys, for the above-titled response pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Local Rule 7.1, stating as follows:

### I. Legal Standards – Rule 12, Rule 18, and Jurisdiction

Motions to dismiss pursuant to Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case. *Ctr. For Dermatology & Skin Cancer Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). The claimant bears the burden of proving the jurisdictional requirements have been met. *Id.*

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). To state a claim for relief, a party need only provide a short and plain statement of the claim showing he is entitled to relief and giving the defendant fair notice of the claims. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). When considering a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the Court construes the pleading in the light most favorable to the pleader, accepting all well-pleaded allegations as true and construing all reasonable inferences in the pleader's favor. *Id.; Alicea–Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003).

To survive dismissal, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). To meet the standard of facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (*citing Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. At this stage, it is improper for a court to "decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

Additionally, Rule 18 permits a plaintiff to join as many claims as he has against an opposing party. Fed. R. Civ. P. 18(a). Supplemental jurisdiction allows federal courts to hear and decide state law claims along with federal law claims when they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corr. v. Schacht*, 524 U.S. 381, 387, 118 S. Ct. 2047, 2051 (1998) (*quoting* 28 U.S.C. § 1367(a)). Here, Plaintiff's claims as set forth in Counts III-XII are part of a common nucleus of operative facts involving claims of federal law as contained in Counts I-II. Thus, the Court may exercise supplemental jurisdiction over Counts III-XII.

Furthermore, federal district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different states …" 28 U.S.C. § 1332(a)(1). Plaintiff is now, and at all times mentioned in the Complaint was, a permanent citizen of and domiciled in the State of Florida. See D/E 1-1 at ¶I.(b). All Defendants, including QU, are citizens of and domiciled in the State of Illinois. See D/E 13 at ¶¶ 6, 9-12. The amount in controversy exceeds

$75,000. See D/E 1-1 at ¶VII. Accordingly, this Court can exercise jurisdiction pursuant to 28 U.S.C. § 1331 (and 28 U.S.C. § 1367) or 28 U.S.C. § 1332.

## II. Plaintiff adequately pled a hostile educational environment claim.
### A. Title VI and Title VII jurisprudence govern Title IX hostile educational environment claims.

In determining whether a hostile educational environment exists, courts are guided by hostile work environment law under Title VII of the Civil Rights Act of 1964 ("Title VII"). *Smith v. Metropolitan Sch. Dist. Perry Twp.,* 128 F.3d 1014, 1023 (7th Cir. 1997). Additionally, Title IX was patterned after Title VI of the Civil Rights Act of 1964 ("Title VI"). *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694, 99 S. Ct. 1946, 1956. Congress passed Title IX with the explicit understanding that it would be interpreted as Title VI was. *Id.* "Title VI and Title IX are so similar that a decision interpreting one generally applies to the other." *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014). Title VI and Title VII cases, therefore, guide the interpretation of Title IX.

Title VII and Title IX both prohibit sexual harassment as a form of "sex discrimination" or discrimination "on the basis of sex." *Smith v. Metropolitan Sch. Dist. Perry Twp.,* 128 F.3d 1014, 1023 (7th Cir. 1997) (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S. Ct. 2399 (1986)). The United States Supreme Court's decision in *Jackson v. Birmingham Board of Education* provides an important framework for a Title IX retaliation claim. In *Jackson*, the Court points to repeated holdings construing "discrimination" under Title IX broadly and acknowledges the broad scope of the statute. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 168, 125 S. Ct. 1497, 1501 (2005). The Court pointed out that retaliation is discrimination "on the basis of sex" because it is an intentional response to the nature of the complaint: an allegation of sex discrimination. *Id*. Further, the Court held that where retaliation occurs because the

complainant speaks out about sex discrimination, the "on the basis of sex" requirement is satisfied—the complainant himself is a victim of discrimination, **regardless of whether he was the subject of the original complaint.** *Id.* at 179, 1507 (emphasis added).

While the analysis in *Jackson* mostly involved a retaliation complaint, the exact same analysis should apply to Plaintiff's claim for a hostile educational environment. Plaintiff alleges that he participated in an investigation involving allegations of sexual harassment/sex discrimination. See D/E 1, ¶¶ 25-26, 34. As such, the "on the basis of sex" requirement is met. Put simply, a person who freely participates in an investigation into sex discrimination must be protected from not only retaliation, but also from an abusive, intimidating, and hostile educational and athletic environment that could result from his/her participation in the investigation. "Retaliation" and being subjected to a "hostile educational environment" are not one in the same. "Retaliation" occurs when an adverse action is taken; a "hostile educational environment" may not involve an adverse action, but may otherwise be the result of participation into an investigation of sex discrimination.

Moreover, if there is no protection from or recourse for a "hostile educational environment," perpetrators can rest assured that they are free to subject anyone who cooperates with an investigation into sex discrimination to abuse, intimidation, ridicule, and threats, all of which completely discourage witnesses from reporting or cooperating. Forcing someone to endure discrimination, ridicule, intimidation, and threats (i.e., a hostile educational environment) as a result of his cooperation with an investigation into sex discrimination completely disregards the precise reasons Congress enacted Title IX in the first place: to prevent the use of federal dollars to support discriminatory practices and to provide individual citizens effective protection against those practices. See *Cannon, supra.* Granting QU's motion to dismiss on the grounds

stated in its motion would run afoul to Title IX's sweeping purpose of eradicating discrimination of all kinds in education.

**B. Courts recognize causes of action for a "racially hostile educational environment" under Title VI and a "retaliatory hostile work environment" under Title VII; therefore, a "retaliatory hostile education environment" claim is consistent with precedent and well-established legal principles under Title VI and Title VII.**

Further support for Plaintiff's position is found within the framework and precedent of Title VI and Title VII. Title VI precedent identifies a cause of action for a racially hostile educational environment. See *Qualls v. Cunningham*, 183 Fed. Appx. 564, 567 (7th Cir. 2006) ("To establish a hostile educational environment under Title VI, [plaintiff] must show that the alleged harassment was severe or pervasive enough to deprive him of access to educational benefits.").

Title VII's general prohibition against discrimination includes a prohibition against creating a hostile or abusive environment. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014). Title VII is violated when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367 (1993); See also *Hobbs v. City of Chicago*, 573 F.3d 454, 464 (7th Cir. 2009) ("Retaliatory harassment can rise to the level of a hostile work environment when it is severe enough to cause a significant change in the plaintiff's employment status."). Deciding whether a work environment is "hostile" involves consideration of a variety of factors, including the frequency of improper conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interferes with performance. *Alexander*, *supra,* 739 F.3d at 982.

It therefore follows that a claim for a retaliatory hostile educational environment exists. Plaintiff has alleged he subjectively perceived his educational environment to be hostile or abusive and that his educational environment was objectively permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of his educational environment. See D/E 1, ¶¶ 42-51, 75-77. Plaintiff also alleges he was deprived of educational (and athletic) benefits when he was forced to complete the Spring 2017 semester online. See D/E 1, ¶¶ 44-45. Using Title VI and Title VII case law to interpret Title IX, it is clear Plaintiff adequately pled a cause of action for a retaliatory hostile educational environment.

## III.   Defendants' reliance on "preemption" is misplaced.
### A. Defendants' argument is inconsistent with the Illinois Supreme Court's holding in *Blount v. Stroud*.

Defendants argue the following claims are preempted by the Illinois Human Rights Act ("IHRA"): (1) intentional infliction of emotional address ("IIED"); (2) negligent infliction of emotional distress ("NIED"); (3) negligent supervision; and (4) negligent retention. None of Plaintiff's claims are preempted by the IHRA.

The concept of "preemption" and the IHRA is governed by the Illinois Supreme Court's decision in *Blount v. Stroud*, 232 Ill.2d 302, 904 N.E.2d 1 (2009), which was not cited by Defendants. In *Blount*, the Illinois Supreme Court held that a claim is independent of the IHRA if it was stated without reference to the legal duties the IHRA creates, and instead refers to common law or other statutes, such as federal anti-discrimination statutes. *Blount v. Stroud*, 232 Ill.2d 302, 315, 904 N.E.2d 1, 9-10 (2009).

Even if the facts giving rise to a civil rights violation, as defined by the IHRA, could also give rise to a civil rights violation as defined by federal law, the administrative procedures in place and the authority of the Illinois Department of Human Rights ("Department") and the

Illinois Human Rights Commission ("Commission") apply **only** to violations of the IHRA. *Id.* at 326-27, 16 (emphasis added). In short, the Department and Commission administer the IHRA—not federal law—and their authority can extend no further. *Id.* Any claim of a civil rights violation brought before the Department or Commission must be examined through the lens of our **state law**. *Id.* (emphasis added). **Thus, a party, like the Plaintiff here and in *Blount*, who wishes to pursue rights and remedies under federal law may not do so before the Department or Commission, as these administrative entities have no statutory authority to entertain federal claims.** *Id.* (emphasis added).

As explained in *Blount* and in the IHRA, preemption is extremely limited in scope: "[i]f the plaintiff's allegations against the defendant implicate only a duty provided by the IHRA, such as the duty of employers to refrain from discriminating against employees on the basis of their race or national origin, [then] the plaintiff's claim is preempted." *Bannon v. Univ. of Chi.*, 503 F.3d 623, 630 (7th Cir. 2007). The *Blount* holding is clear:

> Our holding … rests on the language of the Act. The statutory provision at issue here—[§] 8–111—provides an exclusive remedy for state "civil rights violations," as defined in the Act, but makes no mention of common law tort actions. "A legislative intent to abrogate the common law must be clearly and plainly expressed." *Maksimovic* [citation omitted]. Nothing in the Act indicates an intent to abolish all common law torts factually related to incidents of retaliation. Accordingly, we conclude that plaintiff's claim for retaliatory discharge was properly before the circuit court.

*Blount*, 232 Ill. 2d at 315, 904 N.E.2d at 10.

Here, Plaintiff is pursuing federal claims under Title IX of the Education Amendments of 1972. Plaintiff's alleged civil rights violations under Title IX are not "civil rights violations" as defined by the IHRA. Since the Department and the Commission authority is limited to Illinois legal issues, they have no authority to administer federal law. There is **nothing** in the IHRA

indicating an intent to abolish Plaintiff's tort claims. Accordingly, Plaintiff's claims simply do not fall within the scope of the IHRA and preemption does not apply.

Several cases after *Blount* have rejected the arguments Defendants advance. The case at bar is similar to *Torres v. Merck Sharp & Dohme Corp.*, 255 F. Supp. 3d 826 (N.D. Ill. 2017). *Torres* clarifies the "inextricably linked" test – "the upshot is that, in this preemption context, 'inextricably linked' (as fuzzy a phrase as it is) has a concrete meaning under Illinois law: if the proposed claim need not refer to the [IHRA] to state a valid legal claim, then there is no preemption." *Id.* at 832. "**Factual overlap** is **not** the dividing line between preemption or not." *Id.* (emphasis added). "So merely because the facts underlying a claim **could** be fashioned into a claim under the [IHRA] does not automatically mean it is preempted…" *Id.* (emphasis added). "If a claim can be brought independently from the [IHRA], then that claim is **not** inextricably linked… it is 'extricable' from it…" *Id.* (emphasis added). The court held Plaintiff was not calling upon the IHRA to undergird his Whistleblower Act claim in any way. *Id.* at 833.

In *Thurman v. BMO Capital Markets Corp.*, the case concerned a federal court's ability to hear a state claim not based on the IHRA but alleging behavior outlawed by the IHRA. *Thurman v. BMO Capital Markets Corp.*, 10 C 5727, 2011 WL 1004652 (N.D. Ill. Mar. 16, 2011). The court relied on *Blount,* holding that the presence of another source of legal duties the claim expressly invokes, which in this case were duties outlawing retaliation contained in the Family Medical Leave Act and the Illinois Whistleblower Act, removes it from the exclusive jurisdiction of the IHRA. *Id.* Additionally, *Cochran v. BMA Mgmt., Ltd.* relies on *Blount* and states that even if facts gave rise to a violation of the IHRA, but also give rise to a claim under the Whistleblower Act, such claim cannot fall within the scope of the IHRA. *Cochran v. BMA Mgmt., Ltd.*, 08-CV-215-DRH-CJP, 2009 WL 1372987 (S.D. Ill. May 15, 2009).

The distinction, therefore, between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached; that is, if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not furnish the legal duty that the defendant was alleged to have breached, the IHRA does not preempt a state law claim seeking recovery for it. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006). Thus, if plaintiff's claims "rest [ ] not just on behavior that is sexually harassing, but rather behavior that would be a tort [regardless of defendant's] motives," they are not preempted. *Id.* at 605. The real inquiry is whether the IHRA preempts the proposed claim because the IHRA is the **sole source** of the **legal duty** on which it is premised. *Torres, supra,* 255 F.Supp.3d at 832 (emphasis added). The Illinois Supreme Court held in *Maksimovic* that preemption should rest on an examination of **legal duties**, not on the factual basis of claims. *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 517, 687 N.E.2d 21, 23 (1997) (emphasis added).

In this case, Plaintiff's claims for IIED, NIED, negligent retention, and negligent supervision involve conduct that is actionable regardless of the legal duties contained in the IHRA and Title IX. The IIED claim and the NIED claim contain factual overlap to Plaintiff's Title IX claims. However, the IIED claim involves the duty not to intentionally inflict emotional distress as well as actions before and after the Title IX Investigation. See D/E 1, ¶¶ 24(a), 46, 87. The IIED and NIED claims also each deal with how the investigation was handled by the Defendants. The NIED claim is independent of the Title IX claims because the Defendants, all of whom or of which were in a supervisory position over Plaintiff, owed Plaintiff a duty of reasonable care in training and supervising personnel and in otherwise conducting the investigation in a competent manner. As is alleged, the Defendants breached their duty in multiple ways. See D/E 1, ¶¶ 95-97.

Plaintiff's negligent supervision and negligent retention claims also involve conduct related to his Title IX claims; however, each involve conduct actionable aside from its character as a civil rights violation. Specifically, the negligent supervision and negligent retention claims both involve QU's duty of reasonable care in supervising, training, and disciplining its employees so as to keep student-athletes from harm. See D/E 1, ¶¶ 166-167, 171-172. As for the negligent supervision claim, Plaintiff alleges multiple incidents that were unrelated to his Title IX claims, some of which occurred before the investigation even started. See D/E 1, ¶¶ 24(a)-(d), 28, 30-32, 36. These actions deal with conduct unrelated to the investigation as well as conduct concerning how the investigation was handled. Similarly, in his negligent retention claim, Plaintiff alleges incidents unrelated to the investigation and distinct from the alleged Title IX violations. See D/E 1, ¶¶ 24(a)-(e), 28.

Numerous courts in federal district courts in Illinois have found that the duty not to commit tort claims, including IIED, NIED, negligent supervision, and negligent retention, is independent of duties arising under the IHRA aimed at preventing unlawful discrimination and harassment. See *Zuidema v. Raymond Christopher, Inc.,* 866 F.Supp.2d 933, 940 (N.D.Ill.2011) ("Although the IHRA creates a duty to keep a workplace free of sexual harassment, the duty not to commit [IIED] exists on its own."); *Howard v. Gateway Reg'l Med. Ctr.*, 16-1250-DRH, 2017 WL 432798, at *2 (S.D.Ill. Jan. 31, 2017) (Plaintiff set forth the elements of IIED and the conduct alleged is a tort even aside from its character as a civil rights violation, so the claim is not preempted); *Tate v. Wirtz Beverage Illinois, LLC*, 15-CV-827-DRH-DGW, 2016 WL 3211439 (S.D.Ill. June 9, 2016) (Rejected Defendant's arguments that claims for IIED, negligent supervision, and negligent retention were preempted by the IHRA due in part to independent duties imposed on employers); and *Elder v. Elliott Aviation, Inc.*, 4:15-CV-04123-SLD-JEH,

2016 WL 5213909 (C.D.Ill. Sept. 20, 2016) (Notes the limited scope of IHRA preemption and rejects defendant's argument that the court lacks jurisdiction over tort claims arising out of conduct related to a federal law violation).

Defendants incorrectly argue that preemption applies because of the similar factual basis of the claims; however, *Maksimovic* states we must examine legal duties, not the factual basis. All of these claims rest not just on facts related to the retaliatory actions of Defendants, but also on behavior and duties that, standing alone, constitute actionable torts. Additionally, the duties for these claims involve duties under a federal statute of which the IHRA has no jurisdiction – Title IX – and not the IHRA. As such, none of the claims are "inextricably linked" to a civil rights violation as defined by the IHRA and the jurisdictional bar is not triggered.

**B. The cases cited by Defendants are distinguishable.**

Defendants rely on pre-*Blount* cases in *Geise v. Phoenix Co. of Chicago, Inc.,* 159 Ill. 2d 507, 639 N.E.2d 1273 (1994) and *Coleman v. Joliet Junior Coll.*, 06 C 2135, 2006 WL 3524417 (N.D. Ill. Dec. 4, 2006). Both are irrelevant since they are pre-*Blount*. Defendants also cite *Bogie v. PAWS,* 914 F. Supp. 2d 913 (N.D.Ill. 2012) and *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922 (7th Cir. 2017), each of which should not be followed because they both failed to address the significance of the *Blount* decision. Defendants also cite *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 687 N.E.2d 21 (1997). *Maksimovic* held that the plaintiff established the necessary tort elements independent of any legal duties created by the IHRA. As cited above, *Maksimovic* also held preemption should rest on an examination of legal duties, not on the factual basis of claims, which is exactly what Defendants are arguing. *Maksimovic, supra. Geise, Coleman, Bogie, and Nischan* all held that the IHRA furnished the legal duty that the defendant allegedly

breached. Here, as stated above, Plaintiff alleges duties and actions separate and distinct from the IHRA like in *Maksimovic*.

Defendants miss the point of IHRA preemption—it bars common law tort claims only when an IHRA violation (as defined by the IHRA) forms the basis for the legal duty associated with the tort claim. Defendants' argument distorts the Illinois Supreme Court's construction of the exclusivity provision of the IHRA as propounded in *Blount*. Simply stated, claims that make no reference whatsoever to the IHRA and do not rely on the IHRA cannot be preempted. Therefore, the Court must deny the motion to dismiss on IHRA preemption grounds.

**IV.    Plaintiff's claim for intentional infliction of emotional distress is sufficient.**

"[E]xtreme and outrageous behavior requires conduct that goes beyond all possible bounds of decency, such that a reasonable person would hear the facts and be compelled to feelings of resentment and outrage." *Duffy v. Orlan Brook Condo. Owners' Ass'n*, 981 N.E.2d 1069, 1079 (Ill. App. Ct. 2012). The degree of power or authority which a defendant has over a plaintiff can impact upon whether that defendant's conduct is outrageous. *McGrath v. Fahey*, 126 Ill. 2d 78, 86–87, 533 N.E.2d 806, 809–10 (1988).

The more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff's detriment. *Id.* Threats, for example, are much more likely to be a part of outrageous conduct when made by someone with the ability to carry them out than when made by someone in a comparatively weak position. *Id.* The Restatement (Second) of Torts (1965) mentions school authorities, among others, as examples of the type of individuals who may be positioned to exercise power or authority over a plaintiff. *Id.* Also worthy of serious consideration is a defendant's awareness that

the plaintiff is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. *Pub. Fin. Corp. v. Davis*, 66 Ill. 2d 85, 94, 360 N.E.2d 765, 769 (1976). Behavior which (though rude, abrasive or extremely inconsiderate) may not otherwise be actionable may be deemed outrageous if the defendant knows that the plaintiff is peculiarly susceptible to emotional distress. *Id.*

Defendant Holzgrafe had significant control over Plaintiff, holding the keys to his tennis career and education. Plaintiff alleged that Defendant Holzgrafe disclosed certain personal and confidential medical conditions of Plaintiff to members of the tennis programs. See D/E 1, ¶ 46. Such a disclosure would cause a reasonable person to consider the behavior "extreme and outrageous," especially since Defendant Holzgrafe was in a position over Plaintiff where he was aware of certain medical conditions that infer Plaintiff was "peculiarly susceptible to emotional distress." Plaintiff also alleges Defendant Holzgrafe threatened his standing at QU, labeled him as the source of the investigation, and otherwise criticized and ridiculed him. See D/E 1, ¶ 87.

These allegations display behavior that checks the boxes of an IIED claim as identified by Illinois courts, especially so given the position of authority Defendants occupied over Plaintiff in his educational and athletic environment and the knowledge Defendants had of Plaintiff's susceptibility to emotional distress. Since this is only the pleading stage, the Court cannot conclude that, at this point, Plaintiff would be unable to prove sufficient facts to support his claims for IIED. Accordingly, the motion to dismiss must be denied.

**V. Plaintiff's claim for negligent infliction of emotional distress is adequately pled.**

All Defendants argue Plaintiff has not alleged a "physical impact" in his Complaint. That is not the case. A simple review of Plaintiff's Complaint reveals that he suffered "past, present, and future physical and psychological pain, suffering, and impairment" as a result of the

Defendants' conduct. See D/E 1 at ¶¶ 1, 97. When viewing this pleading in the light most favorable to Plaintiff, it is clear Plaintiff alleged sufficient factual content that allows the court to draw the reasonable inference that the Defendants are liable for NIED. There can be no serious argument that the Defendants are not on notice of the nature of Plaintiff's NIED claim. Factual allegations supporting all elements of a claim for NIED, including physical injury or impact, are set forth in Plaintiff's Complaint. Dismissal based on factual insufficiency is thus unwarranted.

## VI.     Plaintiff's breach of contract claim is sufficient.

A contractual relationship exists between a university and its students by the terms set forth in the university's catalogs and bulletins. *Raethz v. Aurora U.,* 805 N.E.2d 696, 699 (Ill. App. 2d Dist. 2004). "[A] student may have a remedy for breach of contract **when it is alleged** an adverse academic decision has been made concerning the student but only if was made arbitrarily, capriciously, or in bad faith." *Id.* (emphasis added).

Plaintiff's Complaint alleges an adverse academic decision—Plaintiff's suspension and removal from the QU campus—which could be viewed as arbitrary, capricious, or made in bad faith. See D/E 1, ¶¶ 40-45. In the course of discovery, Plaintiff could conceivably uncover additional catalogs, bulletins, handbooks, and other materials containing other policies and procedures, all of which would expand the terms of the contractual relationship between Plaintiff and QU.

Defendants' motion to dismiss argues that the Community Standards Process only concerns procedures for students, and not for faculty or staff. If this is true, there does not appear to be procedures or policy in place to hold faculty or staff accountable for harassment against students or creating a hostile environment for students.

In addition, Defendants argue that the "anti-retaliation statement" within the QU Handbook only prohibits retaliation against people **who file** a complaint of sexual misconduct. If this were true, then by its own admission, QU does not offer any protections to persons who assist or participate in an investigation of sexual misconduct. In other words, QU permits retaliation against persons who assist in or participate in investigations of sexual misconduct, which is patently illegal. Plaintiff has alleged a breach of contract claim, so the motion to dismiss must be denied.

**VII.   Plaintiff's claim for estoppel/detrimental reliance is adequately pled.**

Plaintiff pled this claim in the alternative to the breach of contract claim. At the pleading stage, a plaintiff is only required to make allegations that it relied on unambiguous promises made by a defendant, that it should have been foreseeable to the defendant that the plaintiff would rely on those promises, and that the plaintiff relied on such promises to its detriment. *Quake Const., Inc. v. Am. Airlines, Inc.,* 565 N.E.2d 990, 1004 (1990).

QU's argument is limited to specific sections or provisions of the handbook and fails to consider other promises and representations made by QU and its agents throughout the recruiting process and during Plaintiff's tenure at QU. QU fails to argue, or even mention, that there may have been other forms of promises and representations the Plaintiff relied on to his detriment. Thus, it cannot be determined at this stage that all of these promises and representations are ambiguous as QU argues in its motion to dismiss. The Complaint properly alleges that Plaintiff relied on these promises and representations to his detriment. Plaintiff chose to forego other athletic scholarships and academic opportunities in reliance on said promises and representations. QU should have reasonably expected that Plaintiff would rely on these promises and representations based on Plaintiff's decision to pursue academic interests and participate in

collegiate tennis at QU instead of other institutions. Thus, the estoppel claim is satisfactory and dismissal is not justified.

**VIII.    Plaintiff's remaining claims are sufficiently pled.**

Plaintiff incorporates the arguments and legal authorities set forth in his respective responses to: (1) Defendant Holzgrafe's and Defendant Lathrop's Motions to Dismiss regarding Plaintiff's defamation claim in Count VII; (2) Defendant Tracy's, Defendant Holzgrafe's, and Defendant Lathrop's Motions to Dismiss regarding Plaintiff's public disclosure of private facts claim in Count VIII; (3) Defendant Holzgrafe's and Defendant Lathrop's Motions to Dismiss regarding Plaintiff's false light claim in Count IX; and (4) Defendant Holzgrafe's and Defendant Lathrop's Motions to Dismiss regarding Plaintiff's intrusion upon seclusion claim in Count X.

**IX.    Summary**

Plaintiff's Response to QU's Motion to Dismiss negates all of QU's arguments and contentions regarding the sufficiency of Plaintiff's Complaint. QU's arguments ignore the existing body of state common law for preemption under the IHRA. Therefore, QU's Motion to Dismiss is without any legal or factual merit and should be denied in its entirety.

WHEREFORE, Plaintiff, DANIEL R. LOZIER, II, moves this Honorable Court to deny Defendant Quincy University Corporation's Motion to Dismiss.

Respectfully submitted,

DANIEL R. LOZIER, II, Plaintiff

By: s/ Patrick J. Sheehan, III
        One of His Attorneys

Attorneys for Plaintiff:
Patrick J. Sheehan, III | #6317916 | jr@sheehanlaw.net
William P. Sheehan | #6327880 | wps@sheehanlaw.net
Patrick J. Sheehan | #2575280 | pat@sheehanlaw.net
SHEEHAN & SHEEHAN, LAWYERS, P.C.
1215 South 4th Street
Springfield, IL  62703
(217) 544-0701

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2018, I filed PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT QUINCY UNIVERSITY CORPORATION'S MOTION TO DISMISS WITH MEMORANDUM OF LAW with the Clerk of the Court using the electronic filing system (CM/ECF) which will send notification of such filing to the following:

Denise Baker-Seal, #6255589
BROWN & JAMES, P.C.
Attorneys for Defendants
Richland Plaza I, 525 W. Main St., Ste. 200
Belleville, Illinois 62220-1547
Ph: 618-235-5590
Fax: 618-235-5591
Email: dseal@bjpc.com; dowens@bjpc.com

s/ Patrick J. Sheehan, III

Patrick J. Sheehan, III (#6317916)
SHEEHAN & SHEEHAN, LAWYERS, P.C.
Attorneys for Plaintiff
1215 South 4th Street
Springfield, IL 62703
(217) 544-0701 | jr@sheehanlaw.net