## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **DANIEL R. LOZIER, II,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | No. 3:18-cv-3077 |
| | ) | |
| **QUINCY UNIVERSITY** | ) | |
| **CORPORATION, CHRISTINE** | ) | |
| **TRACY, SAM LATHROP,** | ) | |
| **MARK BELL, and** | ) | |
| **BRIAN HOLZGRAFE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Motions to Dismiss filed by Quincy University Corporation (d/e 14), Brian Holzgrafe (d/e 15), Sam Lathrop (d/e 16), Christine Tracy (d/e 17) and Mark Bell (d/e 18) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Motions to Dismiss filed by Defendants Lathrop, Tracy, and Bell are GRANTED. The Motions to Dismiss filed by Quincy University and Defendant Holzgrafe are GRANTED IN PART and DENIED IN PART. Counts I, II, III, V, VI, VIII, IX, XI, and XII remain against Quincy University. Counts III, VIII, and IX remain

against Holzgrafe.  Defendants also filed a Motion to Strike (d/e 19) that is addressed by separate order.

## I. INTRODUCTION

In April 2018, Plaintiff, Daniel R. Lozier II, filed a twelve-count Complaint alleging violations of federal and state law arising from Defendants' responses to Plaintiff's participation and cooperation with an investigation of the head tennis coach.  The defendants include Quincy University Corporation (Quincy University), an entity that receives federal financial assistance and benefits; Christine Tracy, Dean of Students and Academic Success (Dean Tracy); Sam Lathrop, Director of Safety and Security and who served as the Title IX Investigator at Quincy University (Director Lathrop); Mark Bell, Vice President of Intercollegiate Athletics and who served as Athletic Director (VP Bell); and Brian Holzgrafe, Head Tennis Coach of the Men's Tennis Program and Women's Tennis Program at Quincy University until his resignation in May 2017 (Coach Holzgrafe).

Plaintiff's Complaint contains two claims against Quincy University under Title IX of the Education Amendments of 1972 – Count I, retaliation and Count II, hostile educational environment.

Plaintiff also brings various state law claims against many of the defendants, including intentional infliction of emotional distress (Count III), negligent infliction of emotional distress (Count IV), breach of contract (Count V), estoppel and detrimental reliance (Count VI), defamation (Count VII), public disclosure of private facts (Count VIII), false light (Count IX), intrusion upon seclusion (Count X), negligent supervision (Count XI), and negligent retention (Count XII).

## II. JURISDICTION AND VENUE

This Court has federal question jurisdiction over Counts I and II because they allege violations of a federal statute.  <u>See</u> 28 U.S.C. ' 1331.  The Court has supplemental jurisdiction over Counts III through XII, which allege violations of state law arising from the same general set of facts.  <u>See</u> 28 U.S.C. ' 1367(a). Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred within the judicial district of this Court.  <u>See</u> 28 U.S.C. ' 1391(b)(2) (a civil action may be brought in Aa judicial district in which a substantial part of the events or omissions giving rise to the claim occurred@).

# III. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint.  <u>Christensen v. Cnty. of Boone, Ill.</u>, 483 F.3d 454, 458 (7th Cir. 2007).  To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving the defendants fair notice of the claims. <u>Tamayo v. Blagojevich</u>, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor.  <u>Id.</u> However, the complaint must set forth facts that plausibly demonstrate a claim for relief.  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007).  A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendants are liable for the misconduct alleged.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a cause of action.  <u>Id.</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move for dismissal of a claim for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  When considering a Rule 12(b)(1) motion, this Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff.   Alicea-Hernandez v. Catholic Bishop of Chi., 320 F.3d 698, 701 (7th Cir. 2003).

## IV. FACTS ALLEGED IN THE COMPLAINT

The following facts come from the Complaint and are accepted as true at the motion to dismiss stage.  Tamayo, 526 F.3d at 1081.

In 2015, Coach Holzgrafe recruited Plaintiff to play tennis at Quincy University.  Plaintiff accepted a scholarship offer and enrolled in Quincy University in the Fall of 2016.

Coach Holzgrafe allegedly engaged in misconduct while acting within in the scope of his employment which had the effect of creating a hostile environment within the Tennis Program.  These acts included the following:

(1) that Coach Holzgrafe referred to Plaintiff as a "privileged white boy from the South";

(2) on information and belief, that Coach Holzgrafe drove a van full of players during a spring break trip while playing a ukulele and steering the rental van with his knees;

(3) on information and belief, that Coach Holzgrafe, during the same spring break trip, side-swiped another vehicle and did not stop or otherwise report the accident;

(4) on information and belief, that Coach Holzgrafe instructed his players not to tell anyone about the hit-and-run accident and directed the players to maintain that the van was hit while parked; and

(5) that a person or persons other than Plaintiff made allegations that Coach Holzgrafe had an inappropriate sexual relationship with a female member of the Women's Tennis Program.

Plaintiff alleges, on information and belief that, on April 10, 2017, that Quincy University became aware of the allegations of an intimate sexual relationship between Coach Holzgrafe and a female member of the Women's Tennis Program. Quincy University commenced an investigation, purportedly to comply with Title IX.

Dean Tracy and Director Lathrop administered and conducted the Title IX investigation. On April 11, 2017, Tracy and Lathrop

arrived at tennis practice and asked Coach Holzgrafe's permission to interview Plaintiff. Plaintiff was ordered to leave practice, and he complied with the request for an interview. Dean Tracy and Director Lathrop assured Plaintiff that the information he provided would be held in confidence, only disclosed on a need-to-know basis, the sources of information would remain anonymous, and the information provided would not be the basis for retaliation against him.

In reliance on these assurances, Plaintiff disclosed (1) concerns Plaintiff had about excessive alcohol use and drug abuse among the Men's and Women's Tennis program; (2) information that Assistant Coach Chris Bueler provided drugs and/or alcohol to members of the Men's Tennis Program and that Coach Holzgrafe had knowledge of this; (3) the incident involving Coach Holzgrafe playing a ukulele and steering a rental van with his knees; (4) the hit-and-run incident and Coach Holzgrafe telling players to say the van was hit while parked; (5) a string of text messages within a group text among Quincy University men's tennis players regarding Coach Holzgrafe's potential dismissal as coach; and (6) Plaintiff's conversation with a tennis teammate after class on April 10, 2017

in which the teammate revealed to Plaintiff certain allegations that Coach Holzgrafe had an intimate sexual relationship with a member of the Women's Tennis Program. Despite the assurances that the information would be held in confidence, the information Plaintiff shared with Dean Tracy and Director Lathrop became well known throughout the Men's and Women's Tennis Programs.

Plaintiff returned to practice immediately after the interview. Coach Holzgrafe and Assistant Coach Bueler berated and verbally attacked Plaintiff in response to Plaintiff's participation in and cooperation with the Title IX investigation. In addition, Coach Holzgrafe informed Plaintiff, in the presence of other teammates, that Plaintiff was kicked off the tennis team.

That same day, Coach Holzgrafe texted Plaintiff the following: "Why would you do this? What have I done to deserve this terrible lie?" The following day, April 12, 2017, Coach Holzgrafe texted Plaintiff the following: "Until this investigation concludes, you will suspend all activities with the men's tennis team here at Quincy University. Please avoid any interaction or communication with the tennis teams."

Plaintiff was not permitted to resume activities with the Men's Tennis Program and was forced to endure a hostile educational and athletic environment. Quincy University advised Plaintiff that he should complete the remainder of the semester online from a remote location off the Quincy University campus.

Plaintiff also alleges, on information and belief, that Coach Holzgrafe began a campaign to humiliate, malign, and discredit Plaintiff. Coach Holzgrafe publicly and/or privately addressed Plaintiff in a manner designed to embarrass or demean Plaintiff, including on one or more occasions referencing personal and confidential medical conditions of Plaintiff that are protected from disclosure by state or federal law.

On April 12, 2017, Plaintiff complained to Dean Lathrop about a teammate drawing pictures during class that depicted Plaintiff as a "snake" and a "rat." Plaintiff alleges he has suffered injuries of a personal and pecuniary nature.

# V. ANALYSIS

Each of the Defendants has filed a motion to dismiss.

## A. Count II States a Claim for Retaliation and Will Not Be Dismissed as Duplicative

Counts I and II of Plaintiff's Complaint are brought against Quincy University under Title IX.  In Count I, Plaintiff alleges that he engaged in protected activity by cooperating and answering questions in an interview pursuant to Quincy University's Title IX investigation.  Subsequently, Plaintiff suffered adverse school-related action when he was kicked off the tennis team, suspended, and banned from all interaction with the Men's Tennis Program. Quincy University has filed an Answer to Count I.

In Count II, Plaintiff alleges that, after he cooperated with the Title IX investigation, he was subjected to a hostile educational environment because he was subjected to ridicule, harassment, and intimidation, which effectively barred his access to Quincy University's educational and athletic opportunities and benefits. Plaintiff alleges that Quincy University knew of the retaliatory actions of Coach Holzgrafe through its agents or representatives

and was deliberately indifferent to the rights and safety of Plaintiff by failing to take corrective action.

Quincy University moves to dismiss Count II. Quincy University asserts that Title IX only protects students from discrimination based on sex and Plaintiff has not stated a claim for a hostile educational environment on the basis of sex. Quincy University asserts that, at most, Count II alleges a retaliation claim, which is duplicative of the retaliation claim in Count I.

Plaintiff responds that retaliation is discrimination on the basis of sex and that a person who participates in a sex discrimination investigation must be protected not only from retaliation but also from an abusive, intimidating, and hostile educational and athletic environment.

Title IX prohibits educational institutions that receive federal assistance from discriminating on the basis of sex. 20 U.S.C. § 1681(a). Title IX implies a private right of action to enforce its prohibition on intentional sex discrimination, which includes a private right of action for an educational institution's deliberate indifference to known acts of teacher-on-student sexual harassment and student-on-student sexual harassment. See Gebser v. Lago

Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998) (teacher sexual harassment of a student); Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 633 (1999) (involving student-on-student sexual harassment and also holding that the harassment must be "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit"). Title IX also prohibits retaliation against a person who speaks out about sex discrimination. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 179 (2005) (holding that Title IX does not require that the victim of the retaliation also be the victim of the discrimination that is the subject of the original complaint).

The Court agrees with Quincy University that Count II is essentially a retaliation claim. Plaintiff does not allege that he was subjected to sexual harassment that created a hostile environment. See Doe v. Columbia Coll. Chi., 299 F. Supp. 3d 939, 950 (N.D. Ill. 2017) (stating that the elements for a Title IX claim for sexual harassment that created a hostile environment include that the plaintiff was subjected to harassment based on his or her sex). Instead, Plaintiff alleges that he was subjected to a hostile

educational environment in retaliation for participating in the Title IX investigation.

Such a claim is, at most, a retaliation claim, not a sexual harassment claim. In <u>Berry v. Delta Airlines, Inc.</u>, 260 F.3d 803, 809 (7th Cir. 2001), the Seventh Circuit noted, in a Title VII case, that "the creation or toleration of a hostile environment motivated purely by the plaintiff's filing of a complaint of sexual harassment" is a form of retaliation, not sexual harassment. <u>See</u> <u>also</u> <u>Knox v. State of Ind.</u>, 93 F.3d 1327, 1334 (7th Cir. 1996) (noting that "[n]othing indicates why a different form of retaliation—namely, retaliating against a complainant by permitting her fellow employees to punish her for invoking her rights under Title VII— does not fall within the statute"). This conclusion is equally applicable here, as the elements of a retaliation claim under Title VII and Title IX are generally the same. <u>See</u> <u>Burton v. Bd. of Regents of Univ. of Wis. Sys.</u>, 851 F.3d 690, 695 (7th Cir. 2017). Therefore, Court II states a claim for retaliation, not sexual harassment.

Quincy University argues that, if Count II is simply a retaliation claim, it is duplicative of Count I and should be

dismissed. Courts may dismiss duplicative counts, the theory being that if the claim has already been brought in one count, the claim need not be brought again under a different title. Atwater v. McLean Cnty. Orthopedics, Ltd., No. 1:16-cv-01217-SLD-JEH, 2016 WL 7408816, at *2 (C.D. Ill. Dec. 22, 2016). The Court declines to dismiss Count II here. Although Plaintiff is only entitled to one recovery, the Court will allow Count II to stand because it contains additional allegations not specifically contained in Count I regarding the alleged retaliation Plaintiff suffered.

## B. Count III States a Claim for the Intentional Infliction of Emotional Distress

In Count III, the intentional infliction of emotional distress claim, Plaintiff alleges that Quincy University, through Coach Holzgrafe, and Coach Holzgrafe engaged in extreme and outrageous conduct directed at Plaintiff. This conduct allegedly included threatening Plaintiff's status as a member of the Men's Tennis Program; suspending and banning Plaintiff from the Men's Tennis Program for participating in the Title IX investigation; labeling Plaintiff as the source of the complaints which triggered the Title IX investigation; publicizing private, confidential information about

Plaintiff that Coach Holzgrafe obtained in his position as head tennis coach at Quincy University; and criticizing and ridiculing Plaintiff in an effort to ostracize him among his peers and teammates. Plaintiff alleges the actions were done willfully and resulted in severe emotional distress.

To state a claim for the intentional infliction of emotional distress, a plaintiff must allege that (1) the conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew there was a high probability that his conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. Schweihs v. Chase Home Fin., LLC, 2016 IL 120041, ¶ 50 (2016). One factor considered when determining whether conduct is deemed outrageous includes whether the defendant abused a position that gave him authority over the plaintiff. Id. ¶ 52.

Quincy University and Coach Holzgrafe move to dismiss Plaintiff's intentional infliction of emotional distress claim on the grounds that the claim is preempted by the Illinois Human Rights Act and fails to state a claim for relief.

The Illinois Human Rights Act is the exclusive state remedy for civil rights violations. 775 ILCS 5/8-111(D) ("Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."). The Act makes it a civil rights violation for, among other things, any representative of an institution of higher education to commit or engage in sexual harassment, for an institution to fail to take remedial action or appropriate disciplinary action when the institution knows a representative was committing or engaging in sexual harassment, or to retaliate against a person because he "participated in an investigation, proceeding, or hearing under this Act." 775 ILCS 5/5A-102, 775 ILCS 5/6-101(A).

"[T]he key to preemption is not whether the facts that support a common law tort claim (like intentional infliction of emotional distress) would also support a claim under the Human Rights Act, but rather whether the plaintiff can prove the elements of the tort independent of any legal duties created by the Illinois Human Rights Act." Richards v. U.S. Steel, 869 F.3d 557, 564 (7th Cir. 2017) (emphasis in original) (internal quotation marks omitted). That is, the Court must determine whether the plaintiff can state a

valid common-law claim without relying on the rights and duties created by the Human Rights Act.  <u>Id.</u> at 565; <u>see</u> <u>also</u> <u>Blount v. Stroud</u>, 232 Ill.2d 302, 314-15 (2009).

In this case, Plaintiff alleges, among other things, that Coach Holzgrafe publicized personal and confidential medical conditions of Plaintiff that are protected from disclosure by federal and state law and which Coach Holzgrafe obtained in the course of his position as head coach.  Compl. ¶¶ 46, 87; <u>see</u> <u>also</u> Compl. Count III, ¶ 86 (incorporating allegations 1 through 85).  This claim, at the very least, does not rely on rights or duties created by the Human Rights Act.  <u>But</u> <u>see</u> <u>Torres v. Merck Sharp & Dohme Corp.</u>, 255 F.Supp.3d 826, 832 (N.D. Ill. 2017) (finding that the Illinois Human Rights Act did not preempt the plaintiff's Whistleblower Act claim premised on the plaintiff's alleged retaliation for filing a discrimination charge with the EEOC).  Moreover, publicity given to private facts can constitute extreme and outrageous conduct.  <u>See</u>, <u>e.g.</u>, <u>Johnson v. K mart Corp.</u>, 311 Ill. App. 3d 573, 579, 580 (2000) (finding publicity given to private facts—including sex lives, health problems, and family problems—would be highly offensive to a reasonable person). Therefore, the Motion to Dismiss Count III is denied.

## C. Count IV Fails to State a Claim for Negligent Infliction of Emotional Distress

In Count IV, Plaintiff brings a negligent infliction of emotional distress claim against Quincy University, Dean Tracy, Director Lathrop, VP Bell, and Coach Holzgrafe.

Plaintiff alleges that Quincy University owed a duty to Plaintiff to ensure that parties interviewed in the course of a Title IX investigation remain free from harm and retaliation. According to Plaintiff, Quincy University breached this duty when Dean Tracy and Director Lathrop arrived at tennis practice, in front of Coach Holzgrafe, the main subject of the investigation, to interview Plaintiff; by permitting Coach Holzgrafe to remain in a position of authority over Plaintiff and the tennis programs and allowing Coach Holzgrafe to discipline, suspend, and terminate Plaintiff from the tennis program; failing to adequately supervise Coach Holzgrafe; failing to take care reasonable care in selecting, training, and supervising Title IX coordinators, investigators, and staff; and failing to adhere to Quincy University's own procedures and policies regarding the investigation.

Defendants move to dismiss Count IV on the ground that the claim is preempted by the Illinois Human Rights Act. Defendants also argue that Count IV fails to state a claim because Plaintiff does not allege that he suffered a physical impact or injury.

Plaintiff argues that the negligent infliction of emotional distress claim is not preempted because the defendants owed Plaintiff a duty of reasonable care in training and supervising personnel and otherwise conducting an investigation in a competent manner. Plaintiff also argues that he has stated a claim because he alleges that he suffered "past, present, and future physical and psychological pain, suffering, and impairment." Pl. Resp. at 13-14 (d/e 22), citing Compl. ¶¶ 1, 97.

Even if the Court were to find that the negligent infliction of emotional distress claim were not preempted by the Illinois Human Rights Act, Count IV fails to state a claim. Under Illinois law, a claim for negligent infliction of emotional distress must include "an allegation of contemporaneous physical injury or impact." Schweihs, 2016 IL 120041, ¶ 38. Plaintiff's Complaint contains no such allegations. The allegation that Plaintiff suffered past, present, and future physical pain is not an allegation of

contemporaneous physical injury or impact.  Therefore, Count IV is dismissed.

**D.    Count V States a Claim for Breach of Contract**

In Count V, Plaintiff alleges that Quincy University breached the Quincy University Student Handbook 2016-2017 (Handbook), the Quincy University Athletics 2016-2017 Compliance Packet (Packet) and other related terms and provisions in bulletins, circulars, and online website information and regulations. Specifically, Plaintiff alleges that (1) the Handbook states that allegations of harassment will be investigated and adjudicated through the Community Standards Process outlined in the Handbook and that Quincy University breached the contract by failing to do so; (2) the Handbook prohibits retaliation and Quincy University breached its contract with Plaintiff by permitting Coach Holzgrafe and others to retaliate against Plaintiff after Plaintiff complied with the Title IX investigation at the demand of Quincy University; and (3) Quincy University breached its contract with Plaintiff by arbitrarily suspending Plaintiff from the Tennis Program and effectively from the University without following the Code of

Ethics for Student-Athletes as stated in the Packet and the Community Standards Process.

Quincy University moves to dismiss the breach of contract count for failure to state a claim. Quincy University attaches to its Motion to Dismiss the Handbook (d/e 14-1) and the Code of Ethics for Student-Athletes (Code of Ethics) (d/e 14-2). When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court may consider documents referenced in the complaint that are central to the plaintiff's claim. Bogie v. Rosenberg, 705 F.3d 603, 609 (7th Cir. 2013) (also noting that an exhibit that "incontrovertibly contradicts" the allegations in the complaint controls). Quincy University asserts that examination of the Handbook and Code of Ethics demonstrates that no breach occurred.

To state a claim for breach of contract, a plaintiff must allege (1) the existence of a valid and enforceable contract; (2) the plaintiff's substantial performance; (3) the defendant's breach of contract; and (4) resultant damages. Dual-Temp of Ill., Inc. v. Hench Control, Inc., 821 F.3d 866, 869 (7th Cir. 2016) (applying Illinois law). A contractual relationship exists between a university

and its students.  Raethz v. Aurora Univ., 346 Ill. App. 3d 728, 732 (2004).  The terms of that relationship are set forth in the university's catalogues and bulletins.  Id.  "[I]n the student-university context, a student may have a remedy for breach of contract when it is alleged that an adverse academic decision has been made concerning the student but only if that decision was made arbitrarily, capriciously, or in bad faith."  Raethz, 346 Ill. App. 3d at 732 (emphasis in original).  Plaintiff has made such allegations here.

Plaintiff alleges that Quincy University arbitrarily suspended Plaintiff from the Tennis Program and effectively from the University without following the Code of Ethics and other policies and procedures.   Specifically, Plaintiff alleges that Coach Holzgrafe, immediately after Plaintiff was interviewed as part of the Title IX investigation, berated and verbally attacked Plaintiff.  Coach Holzgrafe kicked Plaintiff off the tennis team and/or arbitrarily suspended Plaintiff from the team.  Quincy University also advised Plaintiff to complete the remainder of the semester from a remote location off the Quincy University campus.  Because Plaintiff states

a claim for breach of contract, the motion to dismiss Count V is denied.

**E.    Count VI States a Claim for Promissory Estoppel**

Plaintiff pleads Count VI—estoppel and detrimental reliance—in the alternative to Count V—breach of contract—against Quincy University.  The Court interprets the claim as a promissory estoppel claim.

Plaintiff alleges that Quincy University's various policies and procedures constitute representations and promises that Quincy University should have reasonably expected to induce action or forbearance by Plaintiff.  Quincy University should have expected Plaintiff to accept its academic and athletic scholarship offer based on Quincy University's express and implied promises that Quincy University would not tolerate harassment, retaliation, and a hostile educational environment.

Quincy University argues that Count VI fails to state a claim because the promises allegedly made by Quincy University are vague and do not require Quincy University to act and that Plaintiff could not reasonably rely on the promises because the Handbook provides that it is not to be construed as a contract.

To state a claim for promissory estoppel, a plaintiff must allege that (1) the defendant made an unambiguous promise to the plaintiff; (2) the plaintiff relied on the promise; (3) the plaintiff's reliance was expected and foreseeable; and (4) the plaintiff relied on the promise to his detriment.  Newton Tractor Sales, Inc. v. Kubota Tractor Corp., 233 Ill.2d 46, 51 (2009).  "Under Illinois law, a claim for promissory estoppel will only succeed where all the other elements of a contract exist, but consideration is lacking."  Dumas v. Infinity Broadcasting Corp., 416 F.3d 671, 677 (7th Cir. 2005) (citing Bank of Marion v. Robert "Chick" Fritz, Inc., 57 Ill.2d 120, 124 (1974)).  A plaintiff can plead breach of contract and promissory estoppel in the alternative but if the court finds an enforceable contract with consideration, the plaintiff cannot recover under a promissory estoppel theory.  Boswell v. City of Chi., 2016 IL App (1st) 150871, ¶ 34.

As stated above, Plaintiff sufficiently stated a claim for breach of contract.  Because Plaintiff has pled Count VI in the alternative to the breach of contract claim, the Court will not dismiss Count VI at this time.

**F.    Count VII Alleging Defamation Per Se Fails to State a Claim**

In Count VII, Plaintiff brings a defamation claim against Quincy University, Director Lathrop, and Coach Holzgrafe.  Plaintiff alleges that Director Lathrop and Coach Holzgrafe made statements to third parties that Plaintiff was the source of the allegations that triggered the Title IX investigation.  Plaintiff alleges that these statements were false and were defamatory per se because Coach Holzgrafe and Director Lathrop made the statements to prejudice Plaintiff or impute a lack of ability in Plaintiff's trade.

"A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him."  <u>Green v. Rogers</u>, 234 Ill.2d 478, 491 (2009).  Whether a statement is defamatory is a question of law that can be decided on a motion to dismiss.  <u>See</u>, <u>e.g.</u>, <u>Quilici v. Second Amendment Found.</u>, 769 F.2d 414, 417 (7th Cir. 1985) ("[W]hether it was proper for the district court to grant defendant's motion to dismiss hinges on the question of whether the court correctly determined that the articles were not libelous per se"); <u>Cody v. Harris</u>, No.03-CV-934,

2004 WL 783105, at *3 (N.D. Ill. Jan. 22, 2004) (noting that whether a statement constitutes defamation per se is a question of law and dismissing defamation claims where the court determined the statements were not defamatory per se).

To state a defamation claim under Illinois law, a plaintiff must allege that (1) the defendant made a false statement about the plaintiff; (2) the defendant made an unprivileged publication of that statement to a third party; and (3) publication of the statement damaged the plaintiff. Green, 234 Ill.2d at 491. Under Illinois law, statements can be defamatory per quod or per se. Kanfel v. Chi. Sun-Times, Inc., 413 F.3d 637, 639 (7th Cir. 2005). The two types of defamation differ only with respect to the plaintiff's burden to plead and prove damages. In a per quod action, the plaintiff must plead and prove special damages. Bryson v. News Am. Publications, Inc., 174 Ill.2d 77, 104 (1996). In a per se action, damages are presumed if that statement falls within one of five categories of statements: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment;

(4) those that prejudice a party, or impute lack of ability, in his trade, profession or business; and (5) those imputing adultery or fornication.  <u>Bryson</u>, 174 Ill.2d at 88-89.  As noted above, Plaintiff alleges that the statements prejudiced or imputed lack of ability in Plaintiff's trade, profession, or business.

Quincy University, Director Lathrop, and Coach Holzgrafe move to dismiss the defamation count for failure to state a claim. Defendants argue that the statement—that Plaintiff was the source of the Title IX investigation—is not defamatory per se because the statement has nothing to do with Plaintiff's ability to play tennis and shows no prejudice toward his ability to play tennis.[1]  Plaintiff responds that the statement discredits and prejudices his reputation as a student-athlete at Quincy University among his teammates and student peers because a reasonable person would conclude that such statements impute that he is a snitch or a bad teammate.

A statement that prejudices a party or imputes a lack of ability in his trade, profession, or business is one that suggests "unfitness

---

[1] Defendants interpret Plaintiff's Complaint as only alleging a claim of defamation per se.  Plaintiff does not argue otherwise.

for one's profession or trade." See Haynes v. Alfred A. Knopf, Inc., 8
F.3d 1222, 1226 (7th Cir. 1993); Pippen v. NBCUniversal Media,
LLC, 734 F.3d 610, 613 (7th Cir. 2013) (describing this statement
as one that "covers suitability for a trade or profession"). The
statement that Plaintiff was the source of the complaint that
triggered the Title IX investigation does not suggest Plaintiff's
unfitness or lack of suitability as a student-athlete. Plaintiff does
not allege that Defendants stated that Plaintiff made false
allegations that triggered the Title IX investigation. The statement
that Plaintiff was the source of the allegations that triggered the
Title IX investigation is not defamatory per se so Count VII fails to
state a claim.

**G.     Count VIII States a Claim for the Public Disclosure of
        Private Facts Against Coach Holzgrafe and Quincy
        University**

        In Count VIII, Plaintiff brings a public disclosure of private
facts claim against Quincy University, Dean Tracy, Director
Lathrop, and Coach Holzgrafe.

        To state a claim for public disclosure of private facts under
Illinois law, a plaintiff must allege that "(1) publicity was given to
the disclosure of private facts; (2) the facts were private and not

public facts; and (3) the matter made public would be highly offensive to a reasonable person." Johnson, 311 Ill. App. 3d at 579. The publicity requirement can be met by alleging that the disclosure was made to a small number of people who have a special relationship with the plaintiff, which makes the disclosure as devastating as disclosing the information to the public at large. Karraker v. Rent-A-Center, Inc., 411 F.3d 831, 838 (7th Cir. 2005); Doe v. TCF Bank Ill., FSB, 302 Ill. App. 3d 839, 841 (1999) (identifying club and church members as those who fall within the special relationship exception).

Plaintiff alleges that he provided the following information to Dean Tracy and Director Lathrop when interviewed as part of the Title IX investigation: (1) concerns Plaintiff had about excessive alcohol use and drug abuse in the Men's and Women's Tennis program; (2) information that Assistant Coach Chris Bueler provided drugs and/or alcohol to members of the Men's Tennis program and that Coach Holzgrafe had knowledge of this; (3) the incident involving Coach Holzgrafe playing a ukulele and steering a rental van with his knees; (4) the hit-and-run incident and Coach Holzgrafe encouraging players to say the van was hit while parked;

(5) a string of text messages within a group text among Quincy University men's tennis players regarding Coach Holzgrafe's potential dismissal as coach; and (6) Plaintiff's conversation with a tennis teammate after class on April 10, 2017 in which the teammate revealed to Plaintiff certain allegations that Coach Holzgrafe had an intimate sexual relationship with a member of the Women's Tennis Program.  Plaintiff alleges that almost immediately after Plaintiff participated in the Title IX investigation with Dean Tracy and Director Lathrop, the information Plaintiff provided in confidence was known throughout the Men's and Women's Tennis Program.  Plaintiff also alleges that Coach Holzgrafe disclosed certain private confidential medical information about Plaintiff to other members of the Men's and/or Women's Tennis Programs.  Plaintiff alleges that the information was extremely sensitive, not of legitimate public concern, and highly offensive.

Quincy University, Director Lathrop, Dean Tracy, and Coach Holzgrafe move to dismiss Count VIII.  Director Lathrop and Dean Tracy argue that Plaintiff does not allege that they disclosed any information.  Director Lathrop, Dean Tracy, and Coach Holzgrafe also argue that Count VIII fails to state a claim because the private

facts did not concern Plaintiff and Plaintiff did not have a reasonable expectation of privacy as to the substance of his conversations during the Title IX investigation. Quincy University incorporated the arguments in the motions to dismiss filed by Director Lathrop, Dean Tracy, and Coach Holzgrafe. Mot. to Dismiss at 15 (d/e 14).

Plaintiff responds that he alleges that Coach Holzgrafe disclosed and publicized certain personal and confidential medical conditions and that a reasonable inference can be drawn that either Dean Tracy or Director Lathrop disclosed the information that Plaintiff provided during the Title IX investigation. Plaintiff also asserts that whether the private facts concerned Plaintiff is not a necessary allegation and, even if it were, the facts disclosed concerned Plaintiff and Plaintiff's affiliation with the Men's Tennis Program.

Plaintiff has stated a claim against Coach Holzgrafe. Plaintiff alleges that Coach Holzgrafe communicated Plaintiff's personal and confidential medical information. Private facts include health problems. See Johnson, 311 Ill. App. 3d at 579 (finding the facts at issue were private where they included such things as the

"employees' family matters, health problems, and sex lives"); <u>Miller v. Motorola, Inc.</u>, 202 Ill. App. 3d 976, 981 (1990) (plaintiff stated a claim for public disclosure of private facts where she alleged that her mastectomy and reconstructive surgeries were disclosed to her coworkers). Moreover, Plaintiff alleges that the private facts were disclosed to individuals with whom Plaintiff has a special relationship—the tennis team of which he was a member.

Plaintiff fails, however, to state a claim against Dean Tracy and Director Lathrop. Even assuming that Plaintiff adequately alleged that Dean Tracy and Director Lathrop disclosed the information Plaintiff told them during the Title IX investigation to others, Plaintiff does not allege that Tracy and Lathrop disclosed private facts relating to Plaintiff. <u>See</u>, <u>e.g.</u>, <u>Stern v. Great W. Bank</u>, 959 F. Supp. 478, 482 (N.D. Ill. 1997) (noting that an invasion of a right to privacy exposes private facts that would be embarrassing to the plaintiff) (citing <u>Miller</u>, 202 Ill. App. 3d at 980). Instead, Plaintiff alleges that Dean Tracy and Director Lathrop disclosed private facts relating to other individuals. This does not state a claim for the public disclosure of private facts.

Quincy University joins in Director Lathrop, Dean Tracy, and Coach Holzgrafe's motions and does not raise any additional grounds for dismissal of this Count against Quincy University. Therefore, because Count VIII remains against Coach Holzgrafe, the Court will not dismiss this claim against Quincy University.

## H.  Count IX States a False Light Claim Against Coach Holzgrafe and Quincy University but Not Against Director Lathrop

In Count IX, Plaintiff brings a false light claim against Quincy University, Director Lathrop, and Coach Holzgrafe.  To state a claim for false light invasion of privacy, a plaintiff must allege that (1) the defendant's actions placed the plaintiff in a false light before the public; (2) the false light would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice.  Schivarelli v. CBS, Inc., 333 Ill. App. 3d 755, 764 (2002).

Defendants move to dismiss Count IX for failure to state a claim.  Coach Holzgrafe argues that Plaintiff failed to allege the comments Coach Holzgrafe made that placed Plaintiff in a false light and failed to allege that the statements were made in such a fashion as to become public knowledge.  Director Lathrop argues that Plaintiff fails to allege the comments allegedly made by Lathrop

were made in such a fashion as to become public knowledge because Plaintiff only alleges that Lathrop told one person, Holzgrafe, that Plaintiff was the source of the allegations. Quincy University incorporates Lathrop's and Holzgrafe's motions in Quincy University's motion to dismiss.

Plaintiff has stated a false light claim against Holzgrafe. Plaintiff alleges that Holzgrafe made statements that resulted in Plaintiff being labeled a snake, rat, and the source of the Title IX investigation by Plaintiff's teammates and peers. Plaintiff alleges that these statements cast Plaintiff in a false light among his teammates and peers at Quincy University. Construing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has plausibly alleged that Holzgrafe made statements to individuals with whom Plaintiff had a special relationship—members of the tennis team and Plaintiff's peers—that placed Plaintiff in a false light by falsely indicating that Plaintiff was the source of the information that resulted in the Title IX investigation. Such false statement could be highly offensive to a reasonable person. Plaintiff further alleges that Holzgrafe acted with actual

malice because he either knew the statements were false or acted with reckless disregard for whether the statements were false.

Plaintiff has not, however, stated a claim against Director Lathrop. Plaintiff alleges that Lathrop disclosed to Coach Holzgrafe that Plaintiff was the source of the information that resulted in the Title IX investigation. Disclosure of the statement to one person does not meet the public disclosure requirement. Ludlow v. Northwestern Univ., 79 F. Supp. 3d 824, 840 (N.D. Ill. 2015) ("A statement to one person is not sufficiently public to sustain a claim of false light publicity."). Plaintiff also alleges that Director Lathrop prepared a report that was misleading, inaccurate, and discredited Plaintiff, but Plaintiff does not allege that this report was disclosed to the public. See, e.g., Frobose v. Am. Sav. & Loan Ass'n, 152 F.3d 602, 618 (7th Cir. 1998) (holding that "communications and actions between and among employees, officers, and directors of the association, who by virtue of their positions would have a natural interest in, if not a responsibility to know about, the matters communicated" do not support a false light claim).

Quincy University joins in Director Lathrop and Coach Holzgrafe's motions to dismiss this Count and does not raise any

additional grounds for dismissal of this claim against Quincy University. Because Count IX remains against Coach Holzgrafe, the Court will not dismiss this claim against Quincy University. Therefore, Count IX is dismissed as to Director Lathrop but remains as to Coach Holzgrafe and Quincy University.

## I.    Count X Fails to State a Claim for Intrusion Upon Seclusion

In Count X, Plaintiff brings an intrusion upon seclusion claim against Quincy University, Director Lathrop, and Coach Holzgrafe. Plaintiff alleges that Defendants intentionally intruded upon Plaintiff's private concerns expressed in the course of the Title IX investigation regarding Coach Holzgrafe and the Men's Tennis Program. Specifically, Defendants allowed private information shared in the course of the confidential Title IX investigation to be broadcast throughout the Men's and Women's Tennis Programs and the athletic department at large.

Defendants argue that Plaintiff's claim is deficient because the alleged conduct that Plaintiff claims is offensive resulted from the alleged publication of Plaintiff's comments, not the act of prying,

and such allegations cannot form the basis for an intrusion upon seclusion claim. The Court agrees.

To state a claim for intrusion upon seclusion, Plaintiff must allege "(1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) an intrusion that is highly offensive or objectionable to a reasonable person; (3) that the matter upon which the intrusion occurs is private; and (4) the intrusion causes anguish and suffering." Jacobson v. CBS Broad., Inc., 2014 IL App (1st) 132480, ¶ 47 (2014). The tort is not based on publication or publicity but "depends upon some type of highly offensive prying into the physical boundaries or affairs of another person." Lovgren v. Citizens First Nat'l Bank of Princeton, 126 Ill. 2d 411, 417 (1989); Lawlor v. N. Am. Corp. of Ill., 2012 IL 112530, § 34 (specifically recognizing the tort). Examples of conduct that form the basis for the tort of intrusion upon seclusion include "invading someone's home; an illegal search of someone's shopping bag in a store; eavesdropping by wiretapping, peering into the windows of a private home; and persistent and unwanted telephone calls." Lovgren, 126 Ill. 2d at 417 (citing W. Prosser & W. Keeton, Torts § 117, at 854-55 (5th ed. 1984)).

Plaintiff does not allege such conduct here. Plaintiff's allegations depend solely on the publication of statements Plaintiff made and not on conduct involving offensive prying into the physical boundaries or affairs of another. Therefore, Count X is dismissed.

**J.    Counts XI and XII as Alleged Are Not Preempted by the Illinois Human Rights Act**

In Counts XI and XII, Plaintiff brings negligent supervision and negligent retention claims against Quincy University.[2]

Quincy University moves to dismiss these claims on the ground that the claims are preempted by the Illinois Human Rights Act. Specifically, Quincy University argues the crux of these counts is Holzgrafe suspending Plaintiff from the tennis team in retaliation for cooperating with the Title IX investigation. Because that conduct is a Human Rights Act violation, Quincy University argues, the negligent supervision and retention claims are preempted.

As noted above, whether the Human Rights Act preempts a tort claim depends on whether the plaintiff can state a valid

---

[2] Plaintiff originally brought Counts XI and XII against VP Bell but later moved to dismiss those Counts. On July 24, 2018, the Court granted the motion.

common-law claim without relying on the rights and duties created by the Human Rights Act. <u>Richards</u>, 869 F.3d at 565. Plaintiff argues that that his negligent supervision and negligent retention claims do not fall within the scope of the Illinois Human Right Act and also involve conduct unrelated to the Title IX claims.

At the very least, Plaintiff's Complaint alleges misconduct by Coach Holzgrafe separate from the retaliation, including reckless driving, involvement in a hit-and-run accident, and instructing players to not report or to lie about the hit-and-run accident, which do not rely on any rights and duties created by the Human Rights Act. Compl. ¶ 24; Count XI, ¶ 163 (incorporating paragraphs 1 through 162); Count XI, ¶ 169 (incorporating paragraphs 1 through 168). In light of these allegations, the Court will not dismiss Counts XI and XII at this time.

## VI. CONCLUSION

For the reasons stated, the Motions to Dismiss filed by Director Lathrop (d/e 16), Dean Tracy (d/e 17), and VP Bell (d/e 18) are GRANTED. The Motions to Dismiss filed by Quincy University (d/e 14) and Coach Holzgrafe (d/e 15) are GRANTED IN PART and DENIED IN PART. The following claims remain:

(1)    Count I against Quincy University

(2)    Count II against Quincy University

(3)    Count III against Quincy University and Holzgrafe

(4)    Count V against Quincy University

(5)    Count VI against Quincy University

(6)    Count VIII against Quincy University and Holzgrafe

(7)    Count IX against Quincy University and Holzgrafe

(8)    Count XI against Quincy University

(9)    Count XII against Quincy University

Plaintiff may file an amended complaint on or before February 15, 2019.  Defendants shall file answers to the amended complaint (or Quincy University and Holzgrafe shall file answers to the original complaint, if Plaintiff does not file an amended complaint) on or before March 1, 2019.

**ENTERED: January 31, 2019**

**FOR THE COURT:**

_s/Sue E. Myerscough_
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**