UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| BRIAN HOLZGRAFE,              ) | |
|     Counter-Plaintiff           ) | |
|                                ) | |
| vs.                                              ) | No.: 3:18-cv-03077-SEM-KLM |
|                                ) | |
| DANIEL R. LOZIER, II                 ) | |
|     Counter-Defendant         ) | |

### RESPONSE TO COUNTER-PLAINTIFF'S MOTION TO COMPEL

NOW COMES, Counter-Defendant Daniel R. Lozier, II, by and through counsel, and respectfully requests that the Court deny Counter-Plaintiff Holzgrafe's Motion to Compel Certain Financial and/or Confidential Information. In support thereof, Lozier hereby incorporates his objections to Holzgrafe's Discovery requests (*See* Ex. B. to Holz Motion) as if fully stated herein, and states the following:

As Holzgrafe's Motion references, Holzgrafe issued discovery requests on March 29, 2023 such that Lozier's responses were due on the last day of the discovery period authorized by this Court's most recently amended scheduling order. *See* ¶ 2 of Holz. Motion. Holzgrafe asserts that the requests at issue are relevant because Holzgrafe's Counterclaims (filed July 3, 2019) seek punitive damages, and therefore Lozier's "financial condition" is relevant. Dkt. 53. Yet, at no point between July 3, 2019 and March 29, 2023 did Holzgrafe seem interested in Lozier's "financial condition" until after Lozier filed a Motion to Dismiss that referenced a confidential settlement agreement. *See* Dkt. Entry 68.

Before that, Holzgrafe did not seek information relating to Lozier's "financial condition" in written discovery. Holzgrafe did not seek information relating to Lozier's "financial condition"

during Lozier's deposition. Nor did Holzgrafe include Lozier's "financial condition" in his Rule 26 Disclosures.

There, Holzgrafe was required to provide "a computation of *each* category of damages claimed" and the "materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. Pro. 26(a)(iii) (emphasis added). But, punitive damages are not even mentioned in Holzgrafe's initial disclosures, let alone a computation for them or a description of the materials he intended to use to support such a damage award. Lozier argues that this establishes not even Holzgrafe considered Lozier's "financial condition" relevant to this lawsuit. If it was, surely Holzgrafe would have included it as a factor in computing his damages in his initial disclosures, or at some point between July 3, 2019 and March 29, 2023.

While Holzgrafe never inquired about Lozier's "financial condition" between July 3, 2019 and March 29, 2023, he did file a Motion praying "for an Order of this court disclosing to [Holzgrafe] the amount received by [Lozier] and the terms and conditions" of the Confidential Settlement Agreement entered into by Lozier and Quincy University. *See* Dkt. Entries 68 and 79. As this Court will remember, it denied Mr. Holzgrafe's request. Dkt. Entry 94.

Lozier believes this timeline establishes that the discovery requests issued March 29, 2023 were issued merely for Holzgrafe to attempt to gain access to information contained within the confidential settlement agreement. If Lozier's "financial condition" was truly something Holzgrafe intended to introduce at trial (which his Rule 26 Disclosures show he did not), Holzgrafe could have requested that information years ago. Instead, he only became interested in it after he learned of a confidential settlement agreement between Lozier and Quincy, and after he was told he could not have access to it.

Now, nearly four years after filing his counterclaims, Holzgrafe asserts that Lozier's financial condition may be considered by a jury with respect to punitive damages. Holz. Mot. at ¶ 7. While Holzgrafe cites to the 7th Circuit Pattern Jury Instructions for this proposition, he fails to cite to the Committee Comments which state "[t]he Committee takes no position on whether emerging law makes [consideration of financial condition] inappropriate." 7th Cir. Jury Inst. 3.13 Comm. Cmt. (f).

That Committee Comment is followed by citations to two United States Supreme Court opinions indicating a defendant's financial condition may be an inappropriate factor when considering punitive damages, a 7th Circuit case that held "a corporate defendant's net worth is irrelevant to the assessment of punitive damages against it" and a Northern District of Illinois case that pointed out how "evidence concerning financial information 'has . . . [the] potential to distract the jury from the essential issues of the case.'" *Id.* (internal citations omitted).

As such, Lozier objects to the disclosure of *anything* related to his financial condition as being irrelevant (Fed. R. Civ. Pro. 401), but also because he believes these requests are targeted in a harassing and oppressive manner to receive the confidential settlement agreement that Holzgrafe himself appears to recognize may "distract the jury from the essential issues of the case." *See id., citing Pivot Point Int'l, Inc. v. Charlene Products, Inc.*, 932 F. Supp. 220, 223 (N.D. Ill. 1996); *see also* Fed. R. Civ. Pro. 403.

Holzgrafe's own Motion asserts that "it was not expected that Lozier would possess an overwhelming amount of financial information." Holz. Motion at ¶ 8. Indeed, this Court will remember the facts of this case revolve around a freshman in college allegedly defaming Holzgrafe during private conversations with his mother and girlfriend.

While Lozier would be more than happy to oblige Holzgrafe with providing evidence of his "financial condition" at the time the conduct at issue occurred, he assumes Holzgrafe would wholeheartedly object to that offer based off the assumption that these discovery requests are not truly about Lozier's "financial condition" – but only about the settlement agreement entered into well after the alleged defamation.

Surely if *any* settlement agreement was introduced at trial, that information would have "a substantial potential to invade privacy, and an additional potential to distract the jury from the essential issues of the case." *Pivot Point Int'l, Inc*, 932 F. Supp. at 223. A jury would no longer be focused on if Lozier defamed Holzgrafe, or if Holzgrafe was injured, and if so, in what forms. That jury would be focused on an irrelevant confidential settlement between Lozier and Quincy University.

Instead, if Holzgrafe truly believes a jury should find Lozier's conduct in 2017 justifies the award of punitive damages and that that conduct was so reprehensible that Lozier should be punished and deterred from engaging in similar conduct in the future – his financial condition *at the time of the conduct in question* should be introduced such that a person in Lozier's shoes *at that point in time* should be deterred. But, as Holzgrafe surmised, Lozier (as a college freshman) was not expected to possess an overwhelming amount of financial information. Now that Lozier has a confidential settlement, suddenly Lozier's "financial condition" becomes incredibly significant.

Perhaps this is because, as Holzgrafe's own Motion recites, "Holzgrafe believes that his injuries were greater than those claimed by Lozier." Holz. Motion at ¶ 12. This statement itself shows this isn't a request for admissible information to be used at trial. This is a request for

information so Holzgrafe can do his absolute best to make sure he "wins" in his mind. To argue otherwise ignores Holzgrafe's Motion itself and the relevant caselaw.

While perhaps courts may consider previous *jury awards* in analyzing potentially excessive damage awards (*after* the awards are decided), courts have historically recognized the obvious differences between jury awards and settlement agreements. *See, e.g.*, *Clanton v. United States*, No. 15-CV-124-NJR-RJD, 2018 WL 3609225, at *3 (S.D. Ill. July 27, 2018), *aff'd*, 943 F.3d 319 (7th Cir. 2019). It is well-recognized that "many factors that influence settlement are unrelated to the damages the plaintiff has suffered." *Id.*, *quoting from Maldonado v. Sinai Med. Grp., Inc.*, 706 F. Supp. 2d 882, 887 n.6 (N.D. Ill. 2010). Such factors include "the parties' interest in an expeditious resolution and the strength of the plaintiff's liability evidence." *Id.* As a result, "settlements are 'less useful than consideration of verdicts' because '[p]arties settle claims to avoid the uncertainty and expense of trial; and the amount settled for may bear little relation to the amount a jury might award upon finding a defendant liable." *Hardnick v. United States*, No. 07 C 1330, 2009 WL 1810106, at *14 (N.D. Ill. June 25, 2009), as amended (July 1, 2009), *quoting Kasongo v. United States*, 523 F. Supp. 2d 759, 804 n.39 (N.D. Ill 2007).

As such, Holzgrafe's attempts to argue the settlement between *Lozier* and Quincy is "necessary for the jury to fully assess a value of reputational and emotional injuries of *Holzgrafe*," must fail. Holz. Mot. at ¶ 12 (emphasis added). Lozier's confidential settlement with Quincy is not only wholly irrelevant to Holzgrafe's alleged reputational and emotional injuries, but introducing the settlement at all would be unfairly prejudicial, would confuse the issues truly at hand, and would mislead the jury.

Lastly, even if Lozier's "financial condition" were to be considered relevant to this lawsuit, any settlement amount received does not impact his "financial condition." It is well recognized

that compensatory damages sought in lawsuits "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (citing Restatement (Second) of Torts § 903). They are awarded to "serve to make an injured party whole, in effect restoring one to the status quo before the injury was suffered." *Villanueva v. O'Gara*, 282 Ill. App. 3d 147, 150 (1996). In other words, a Plaintiff receiving compensatory damages "is not richer than he was as a result of the settlement, but he is made more whole." *Id.* at 151.

As applied here, Lozier and Quincy entered into a confidential settlement agreement – which, as described above, could have been entered into for any number of reasons – but Lozier's "financial condition" was not impacted as a result of that settlement. Rather, he was merely "made more whole." *See id.* Telling a jury that a settlement that compensated Lozier for injuries that left him incomplete are part of his "financial condition" would improperly inflate Lozier's true "financial condition."

In short, as Lozier asserted in his Objections to Holzgrafe's discovery requests, he believes the totality of Holzgrafe's Requests (including the blatant request for "all settlement agreements entered into by Plaintiff") were designed as an oppressive and harassing attempt to gain access to confidential information Holzgrafe has already been denied access to. Holzgrafe's failure to seek "financial information" at any other point since July 2019, his failure to include it as a computational factor in his damage model as he was required to disclose pursuant to Federal Rule of Civil Procedure 26, and his own Motion indicate all Holzgrafe cares about is arguing that "his injuries were greater than those claimed by Lozier." Holz. Mot. at ¶ 12. Vengeance is not enough to justify a request for irrelevant information that would undoubtedly distract a jury from the true issues at hand in this litigation and would unfairly prejudice Mr. Lozier.

As such, Lozier respectfully requests this Court deny Holzgrafe's Motion in its totality to the extent it seeks an order requesting Lozier's "financial information." To the extent this Court agrees with Holzgrafe that Lozier's "financial condition" may be relevant, Lozier would respectfully request this Court recognize Lozier's "financial condition" from the time of the alleged conduct (April 2017) is relevant, and order disclosure pursuant to an amended discovery request seeking information concerning Lozier's condition in April 2017.

*/s/ Donald M. Craven*
Mr. Donald M. Craven, #6180492
Mr. Joseph A. Craven #6340231
Craven & Craven, P.C.
1005 North Seventh Street
Springfield, IL 62702-3918
dmcraven@aol.com; don@cravenlawoffice.com;
joe@cravenlawoffice.com;
maralee@cravenlawoffice.com
**Counsel for Daniel R. Lozier, II**

## CERTIFICATE OF SERVICE

      I, the undersigned, on August 21, 2023 electronically filed this document with the United States District court, Central District of Illinois which will send electronic notification to each of the following:

Lance T. Jones
HeplerBroom, LLC
4340 Acer Grove Dr
Springfield, IL 62711
ltj@heplerbroom.com
**Attorney for Brian Holzgrafe**

John E. Cassidy, III
Cassidy & Mueller, P.C.
416 Main Street, Suite 323
Peoria, IL 62602
jcassidy@cassidymueller.com
**Attorney for Brian Holzgrafe**

Denise Baker-Seal
BROWN & JAMES PC
Richard Plaza I, Suite 200
525 W. Main Street
Belleville, IL 62220
dseal@bjpc.com
**Attorney For Quincy University Corporation**

Mr. Patrick J. Sheehan, III, #6317916
Mr. William P. Sheehan, #6327880
Sheehan & Sheehan, Lawyers, P.C.
1215 South 4th Street, Suite A
Springfield, IL 62703
jr@sheehanlaw.net
wps@sheehanlaw.net
**Counsel for Plaintiff**

                                            /s/ Maralee Hanners