IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| BRIAN HOLZGRAFE, | ) |
| *Plaintiff,* | ) ) ) |
| *vs.* | ) No. 3:18-cv-03077-SEM-KLM ) |
| DANIEL R. LOZIER, II, | ) ) ) |
| *Defendant.* | ) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**<u>OMNIBUS POST-TRIAL MOTIONS</u>**

Pursuant to Federal Rules of Civil Procedure 50, 59, and Local Rule 7.1(B), Daniel R. Lozier, II ("Lozier"), submits this memorandum in support of Defendant's omnibus post-trial motions for (1) judgment as a matter of law, (2) a new trial, or, alternatively, (3) remittitur. Defendant's motions should be granted based on the grounds set forth below.

**PROCEDURAL HISTORY**

On October 26, 2023, the Court granted Holzgrafe's partial motion for summary judgment, finding *neither party* "'object[s] to . . . a ruling that Lozier made statements to his mother and girlfriend that may be considered defamation *per se*,'" "disputes Counter Plaintiff Holzgrafe is a private individual rather than a public official," nor "argues that a finding of 'actual malice' is a requirement to prove defamation but rather may be considered in determining punitive damages." (ECF Doc. 138 at 7-9.) On April 8, 2024, the Court commenced a jury trial on Plaintiff Holzgrafe's defamation claim.

On April 11, 2024, Defendant moved for judgment as a matter of law at the close of all evidence, under Fed. R. Civ. P. 50(a), on grounds that (1) Holzgrafe failed to establish he suffered

any damage, (2) without compensatory damages, the claim for punitive damages cannot stand, and (3) Holzgrafe failed to establish the elements necessary to prove a claim for punitive damages either under implied or actual malice. (ECF Doc. 198.) The Court denied Defendant's motion and read the final jury instructions that stated, in part, "You may be instructed on punitive damages because the Court has found that Daniel R. Lozier, II has published a defamatory *per se* statement, damages are presumed, and malice is implied." (ECF Doc. 200 at 25.) Later on April 11, the jury returned its verdict, awarding $2,000,000 in general damages, $40,000 in special damages, and $874,000 in punitive damages, totaling $2,914,000. (ECF Doc. 202.) The Court entered judgment on April 15, 2024, back filing to April 11. (ECF Doc. 204.)

On May 1, 2024, Defendant filed an Emergency Motion for Extension of Time to File Briefs in Support of Post-Trial Motions, or in the Alternative, for Leave to File a Supplemental Brief. (ECF Doc. 209.) The Court denied the Motion on May 2, 2024, but did not rule "on whether a supplemental motion may be filed, or an extension to file same" until Defendant meets his post-trial deadline as required by Fed. R. Civ. P. 6. The present Motion is timely under Federal Rules of Civil Procedure 50 and 59, and Defendant reincorporates his Motion for Extension of Time for the same reasons set forth therein. This Motion is not fully briefed insofar as Defense counsel was not present at trial, has not received trial transcripts, and therefore is not able to cite to specific testimony from the Record to support Defendant's Motions. (ECF Doc. 209 at 2.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 50(b) provides that a court may grant judgment as a matter of law where "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted

the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). Upon a timely-filed renewed motion for judgment as a matter of law "the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id.*

Federal Rule of Civil Procedure 59(a) provides "The court may, on motion, grant a new trial on all or some of the issues" after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014) (cleaned up). In considering a request for remittitur, a district court "limit[s] its inquiry to three questions: whether the award is monstrously excessive; whether there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas[;] and whether the award is roughly comparable to awards made in similar cases." *Farfaras v. Citizens Bank & Tr. of Chicago*, 433 F.3d 558, 566 (7th Cir. 2006) (cleaned up).

A "district court possesses the power . . . to alter or amend a judgment after its entry" pursuant to Federal Rule of Civil Procedure 59(e). Fed. R. Civ. P. 59(e) 1946 Committee Notes. Amendment of the judgment is proper when "the movant points to evidence in the record that clearly establishes a manifest error of law or fact." *Stragapede v. City of Evanston, Illinois*, 865 F.3d 861, 868 (7th Cir. 2017) (cleaned up). A manifest error occurs "when the district court commits a wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.* at 868.

### THE ERRORS SUPPORTING JUDGMENT AS A MATTER OF LAW, A NEW TRIAL, OR, ALTERNATIVELY, REMITTITUR

Several fundamental, prejudicial errors occurred before and during the April 8–11, 2024, jury trial, ultimately resulting in a contaminated jury verdict, erroneous judgment as a matter of law, and final judgment. These errors independently and collectively necessitate that judgment as a matter of law be entered on behalf of Defendant, a new trial be ordered, and/or remittitur.

## I.     The Court Erred in Not Applying the Innocent Construction Rule

The Court erred in entering judgment for Plaintiff on liability and instructing the jury that liability for defamation had been established prior to the commencement of trial, as it wholly failed to apply Illinois' innocent construction rule. As the Court correctly noted, there are two types of defamatory statements under Illinois law (ECF Doc. 138 at 5-6): defamation *per se*, where the statement is so harmful to reputation that damages are presumed, and defamation *per quod,* where the statement requires extrinsic facts to show its defamatory meaning. *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003). Statements are defamatory *per se* in Illinois if, among other factors, they falsely accuse the plaintiff of fornication, adultery, or false swearing, 740 ILCS 145/1, *et seq*. If a statement amounts to defamation *per se*, the injury to the plaintiff's reputation is apparent and, consequently, reputational injury may be presumed. *Chi. Conservation Ctr. v. Frey*, 40 Fed. Appx. 251 (7th Cir. 2002). Even so, a court is *required* to apply the innocent construction rule:

> Under the Illinois innocent construction rule, even a statement that falls into one of the limited *per se* categories will not be found defamatory *per se* if it is reasonably capable of an innocent construction. This rule **requires** courts to consider a written or oral statement in context, giving the words, and their implications, their natural and obvious meaning. If a statement may reasonably be interpreted innocently, it cannot be actionable *per se*.

*Republic Tobacco Co. v. N. Atl. Trading Co*., 381 F.3d 717, 726–27 (7th Cir. 2004) (emphasis added) (cleaned up). See also *Harrison v. Chi. Sun-Times*, 341 Ill. App. 3d 555, 793 N.E.2d 760

(2003) ("Even where a statement falls into one of the recognized *per se* categories, it will not be actionable as defamatory if it is reasonably susceptible of an innocent construction."). Statements are capable of being innocently construed if they are made for the "limited purpose of providing information" "concerning a narrow issue" in a "confined setting with a limited audience . . . gathered for [the] specific purpose" of conducting business and no indication of defamatory intent exists. *Pompa v. Swanson*, 2013 IL App (2d) 120911, ¶ 21, 990 N.E.2d 314, 320.

Here, pre-trial briefing shows that Defendant intended to concede only that if Defendant had made the statements concerning Plaintiff Holzgrafe as *assertions of fact*, they could be defamation *per se* and not, by comparison, any other category of defamation where specific damages must be proved.[1] (ECF Doc. 111 at 3-7; Doc. 114 at 2.) Evidence produced during discovery and, on information and belief, evidence put forth at trial showed that when he made the statements at issue, Defendant was not asserting any facts; rather, Defendant was conveying statements he heard to his mother and girlfriend, two confidants he felt he could speak to privately without an expectation that they would publicize what he said, for the specific purpose of determining how to proceed with troubling allegations.[2] If a speaker "is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession

---

[1] During a Motion Hearing held on June 28, 2023, prior defense counsel had the following exchange:
    COURT:    So the reason I set this hearing was I was not sure what the response filed to the motion for summary judgment indicates. Mr. Craven, are you indicating that you're conceding liability on the defamation count?
    CRAVEN:    On Count I of the counterclaim, yes, Judge . . . As to defamation, there are some remaining issues in the count, but and there were -- we tried to clarify, make some clarification, about the precise statements that Mr. Lozier made. But on the ultimate issue of liability on that count, yes.
(Tr. of Summ. J. Hr'g at 2:14-25, 3:1.) In context of the brief and hearing as a whole, prior defense counsel's statement was intended to confirm the precisely worded concession in his brief that if what defendant said constituted libel, it would be libel *per se*.

[2] Hereinafter, statements made "on information and belief" refer to trial testimony, as specific assertions regarding trial testimony or evidence requires access to the transcript, which defense counsel does not yet have.

5

of objectively verifiable facts, the statement is not actionable." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993). To the extent the evidence shows Defendant was investigating a rumor that had come to his attention and not making "an objectively verifiable factual assertion," his limited statements are entitled to a reasonable innocent construction that is not defamatory and not actionable as a matter of Illinois law. *Giant Screen Sports v. Canadian Imperial Bank Of Com.*, 553 F.3d 527, 535 (7th Cir. 2009).

## II. The Court Erred in Not Applying Actual Malice to Evidentiary Findings

The Court erred by not determining whether Plaintiff Holzgrafe should be classified as a public figure—a threshold issue for establishing the requisite standard of proof. There are three categories of defamation plaintiffs: private figures, public figures, and public officials. See *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 328 (1974); *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 154-55 (1967). A plaintiff is a limited purpose public figure when he "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz*, 418 U.S. at 351. *Gertz* also acknowledged that a limited purpose public figure could include an involuntary public figure who has been drawn into a public controversy through no voluntary action of his own. *Id.* at 345.

To prevail on a defamation claim, public figures must meet a higher burden, and establish by clear and convincing evidence that the defendant made a false and defamatory statement of fact with subjective knowledge of falsity or in fact having serious doubts about the truth. *See New York Times Co. v. Sullivan*, 376 U.S. 254 (1964); *St. Amant v. Thompson*, 390 U.S. 727 (1968); *Lykowski v. Bergman*, 299 Ill. App. 3d 157, 164 (1st Dist. 1998) (citing *Gertz*, 418 U.S. at 332).

In response to the Court's question of "whether Counter-Plaintiff Holzgrafe may be considered a public official for purposes of his defamation claim," (ECF Text Order, 06/29/2023),

6

prior defense counsel conceded, "Lozier does not assert that Holzgrafe is a 'public official' for purposes of his defamation claim. Instead, Lozier believes Holzgrafe is a 'private figure.'" (ECF Doc. 120 at 3-4.) The Court failed to mention or offer the alternative of a "public figure" in the inquiry, and from the context, prior defense counsel appears to have been focusing on the fact that he was not contending that Holzgrafe was a public "official." (*Id.*) Indeed, in response to the Court's question of "whether Counter-Plaintiff Holzgrafe must prove the actual malice standard at trial," (ECF Text Order, 06/29/2023), prior defense counsel responded, "Yes, Holzgrafe must prove actual malice as an essential element of his false light claim, and in order to receive punitive damages for his defamation claim."(ECF Doc. 120 at 4.) The Court went on to find that "Neither party disputes Counter Plaintiff Holzgrafe is a private individual rather than public a official [sic], which specifically answers one of the questions posed by the Court pursuant to *New York Times v. Sullivan,* 376 U.S. 254, 264 (1964)." (ECF Doc 138 at 8.)

Whatever prior defense counsel intended to say, it was incumbent on the Court to assess whether or not Plaintiff was a public *figure*, which the Court did not do. The June 29, 2023, Text Order and subsequent responsive briefing demonstrate that the Court only raised the prospect of determining whether Plaintiff Holzgrafe should be classified as a public official or a private figure. The determinative question should have been whether Holzgrafe was a public *figure*, not a public official. The court committed reversible error by neglecting to address the possibility that Plaintiff Holzgrafe could be a public figure. See *Curtis Pub. Co.*, 388 U.S. at 130.

This oversight is particularly significant in the context of Title IX and the ongoing public controversies involving allegations of misconduct by coaches. See e.g., *Vandenburg v. Newsweek, Inc.*, 507 F.2d 1024 (5th Cir. 1975); *Barry v. Time, Inc.*, 584 F. Supp. 1110 (N.D. Cal. 1984); *Cottrell v. Nat'l Collegiate Athletic Ass'n*, 975 So. 2d 306 (Ala. 2007). These controversies

inherently draw public interest and scrutiny, solidifying the status of coaches involved in sexual misconduct allegations as limited purpose public figures under prevailing legal doctrine.

Therefore, even if the statements in question were actionable, it is a federal constitutional requirement that actual malice be proven by clear and convincing evidence for *any* damages to be recovered. *Id.* at 349. See also Ill. Const. art. I, § 2. Actual malice, distinct from common law/express malice, cannot be implied, even when dealing with statements considered libel *per se*. See *Bryson v. News Am. Publ'ns, Inc.*, 174 Ill. 2d 77, 87 (1996) (finding that in defamation *per se* cases, a plaintiff must still plead and prove actual malice where the standard is applicable to any special damages the plaintiff seeks to recover). And at every possible point, counsel consistently asserted that actual malice was not conceded. (ECF Doc. 120 at 1-2.)

### III. The Court Erred in Allowing Testimony and Damages Related to Unforeseeable Republications by Third Parties

The Court's decision to admit evidence related to third-party republications of Defendant's statements constituted a legal error. The doctrine of republication in defamation law holds a speaker liable *only* for the reasonably foreseeable republications of his defamatory statements. *Kallemeyn Collision Ctr., Inc. v. Standard Fire Ins. Co.*, 628 F. Supp. 3d 769, 778 (N.D. Ill. 2022); *Tunca v. Painter*, 358 Ill.Dec. 758, 965 N.E.2d 1237, 1261 (Ill. App. Ct. 2012). In *Tunca*, a plaintiff-surgeon alleged the defendants "stated loudly in public hallways of the hospital" that the surgeon "negligently and inadvertently severed patient's artery." *Id.* at 1242, 1245. The Illinois Appellate Court held that the "natural and probable consequences of each doctor's statements was that it would be repeated to other doctors in that hospital. *Id.* at 1263. In *Kallemeyn Collision*, the Northern District of Illinois, distinguishing *Tunca*, noted the foreseeability standard in defamation cases "relie[s] heavily on the public nature of the comments made" such that if defamatory statements are "spoken within a private context," reasonable foreseeability cannot follow.

*Kallemeyn Collision Ctr.*, 628 F. Supp. 3d at 778. The foreseeability requirement ensures that defendants are only held responsible for the natural and ordinary consequences of their actions. Restatement (Second) of Torts, § 576.

Here, the chain of events following Defendant's confidential communications with his mother and girlfriend did not meet this standard of foreseeability, and, on information and belief, all evidence of those republications and damages caused by them should have been excluded. Defendant shared something he heard with his mother and girlfriend under circumstances suggesting these communications were intended to remain private and confined to that narrow audience. The subsequent dissemination of these statements, leading to broader publication and investigation, was neither intended nor foreseeable. Therefore, introducing these republications as evidence relevant to damages extended liability beyond any reasonable scope.

The specific words that form the basis of the claims were a statement that, "Vayser just told me that Coach had sex with [Jane Doe] on spring break" and "Danyil Vayser told me that Coach and [Jane Doe] had sex over spring break." (ECF Doc. 120 at 3.) In choosing to share what he heard with his mother and girlfriend to seek their views and to get guidance on what to do—even if the statement or cited source were false—Defendant could not possibly have foreseen the sequence of events, including the launching of a Title IX investigation and immediate disclosure of the investigation in violation of Quincy University's Title IX policy,[3] and the cascade of additional republications that resulted. Under these circumstances, Defendant cannot be held liable for damages caused by them, and evidence of such damages should not have been admitted at trial.

**IV.    The Court Erred in Not Requiring Proof of Actual Malice to Support an Award of**

---

[3] SAM LATHROP, 2018 QUINCY UNIVERSITY ANNUAL SECURITY REPORT, 18 ("all information that is disseminated by the University regarding the Title IX Complaint will only be disbursed on a 'need-to-know' basis. The University will not disclose the identities of the Complainant or the respondent, except as necessary to resolve the Complaint or to implement interim protective measures and accommodations or when provided by State or Federal law.")

9

**Punitive Damages**

For 50 years, since the U.S. Supreme Court decided *Gertz*, an award of punitive damages in a libel case without clear and convincing proof of actual malice has been understood to be a violation of the First Amendment, and in this context, is reversible error. Punitive damages may be awarded only when the defendant's conduct "evinces a high degree of moral culpability," or, specifically, when the tort is committed with "actual malice." *Slovinski v. Elliot*, 237 Ill. 2d 51, 58, 927 N.E.2d 1221, 1225 (2010). "Indeed, the Illinois Supreme Court has never approved the recovery of punitive or presumed damages on less than actual malice." *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 733 (7th Cir. 2004) (applying Illinois law). See also *Babb v. Minder*, 806 F.2d 749, 758 (7th Cir. 1986) (same); *Troman v. Wood*, 62 Ill.2d 184, 340 N.E.2d 292, 296 (1975).

A finding that Plaintiff Holzgrafe is a private figure does not inherently satisfy (or dispense with) the requirement for proving actual malice, which is necessary for such an award. *See Myers v. Levy*, 348 Ill. App. 3d 906, 915 (2d Dist. 2004); *Rosner v. Field Enters., Inc.*, 205 Ill. App. 3d 769, 780 (1st Dist. 1990). The omission of a jury instruction on actual malice is plain error, and the entry of the punitive damages judgement without a jury finding of actual malice or sufficient proof of actual malice at trial requires that judgement be entered for Defendant on Plaintiff's claim for punitive damages. (ECF Doc. 200.)

**V.   Unauthorized Third-Party Republications and Privileged Communications**

The verdict should be altered or amended because the communications made with respect to the Title IX investigation were absolutely, or at a minimum, qualifiedly privileged. Generally, statements made in the course of judicial or quasi-judicial proceedings are absolutely privileged and cannot form the basis for a subsequent civil claim if the statements bear some relation or

10

reference to the subject of the inquiry. See *Khan v. Yale Univ.*, 85 F.4th 86, 102 (2d Cir. 2023). Similarly, statements made to law enforcement and other officials in the course of investigations of wrongdoing also are privileged. *Doe v. Univ. of Dayton*, 766 F. App'x 275, 290 (6th Cir. 2019) (noting the different privileges available for those who report to campus authorities and those who seek comfort from their friends).

This includes Title IX investigations, as the basis for the privilege applies with equal force. *Razavi v. Sch. of the Art Inst. of Chi.*, 122 N.E.3d 361, 364 (Ill. App. Ct. 2018) (holding a female student's statements to safety authorities and disciplinary boards following an assault were absolutely privileged for public policy reasons).

On information and belief, evidence presented at trial did not adequately establish causation between Defendant's statements and the alleged damages. The phone call made by Defendant's mother to the school was a privileged communication, and cannot be a basis for requiring Defendant to pay damages. (ECF Doc. 111, Ex. 4, Aff. Cindy Lozier.) Any other result would discourage anyone from reporting concerns of a potential Title IX violation, or from participating in or providing honest information as part of a Title IX investigation. Not requiring Plaintiff to differentiate the specific harm he claims to have suffered and allowing him to testify to alleged damages that were not a direct result of Defendant's mother and girlfriend having heard the statements, as distinct from harm emanating from the Title IX investigation or other republication, was error.

Separate from the consequences of Cindy Lozier's independent republication, Defendant's statements made as part of the Quincy University Title IX investigation are shielded by absolute immunity or, at a minimum, qualified immunity. See, e.g., *Doe v. Roe*, 295 F. Supp. 3d 664, 676 (E.D. Va. 2018) (applying a qualified immunity to complainant's statements made at university

11

disciplinary proceeding given the proceeding lacked due process and the accusation's devastating effects on the accused). As a matter of law, therefore, Plaintiff was not entitled to recover *any* damages attributable to the existence of the Title IX investigation, any statements made during it, or any further republication arising out of the Title IX investigation. Not requiring those to be excluded was clearly erroneous and resulted in the award of excessive compensatory damages by the jury.

## VI. Admission of Hearsay and Indirect Evidence of Reputational Harm

On information and belief, the trial was compromised by the admission of certain non-witness, out-of-court testimony offered to prove the truth of matters asserted. Fed. R. Evid. 801(c). Whether a statement is hearsay and, in turn, inadmissible, depends on the purpose for which it is offered. *United States v. Linwood*, 142 F.3d 418, 425 (7th Cir. 1998).

On information and belief, certain witnesses speculated about the perceptions and statements of others, none of whom testified. There was an absence of direct evidence indicating that anyone's opinion of Plaintiff or his reputation deteriorated due to Defendant statements, nor did any witness confirm a belief in those statements. Indeed, there was not a shred of non-hearsay and non-speculative evidence that Plaintiff's reputation was damaged at all. Hearsay testimony coupled with a lack of direct evidence of reputational harm provides an independent basis for the relief sought.

## VII. The Awarded Damages are Grossly Excessive and Disproportionate

By its definition, "presumed damages are speculative in nature, and this limitation on presumed damages protects a defamation defendant from being subjected to an astronomical award based upon a jury's guess about the plaintiff's unproven harm." *Republic Tobacco Co.*, 381 F.3d at 734. Illinois law requires appellate courts "to give some deference to the jury's determination

of presumed damages while also considering whether it considers the jury award of presumed damages excessive." *Brown & Williamson Tobacco Corp. v. Jacobson*, 827 F.2d 1119, 1141 (7th Cir. 1987). Even so, a district court will have abused its discretion if it grants an award that, on review, an appellate court finds excessive. *Republic Tobacco Co.*, 381 F.3d at 734.

In *Republic Tobacco Co.*, the Seventh Circuit held that a district court abused its discretion in allowing $3.36 million in presumed damages where the plaintiff "failed to identify any presumed damages award in the history of Illinois law remotely in [that] vicinity." *Id.* The court went on to note that the case lacked "proof of economic injury" and the defamatory statements were "publicized to a relatively limited audience." Being mindful that under the theory of presumed damages a party is not required to show specific loss, "there must be some meaningful limit on the magnitude of a jury award when it is arrived at by pure speculation." *Id.* The *Republic Tobacco* court remitted the award to $1 million, which was "sizeable enough to compensate Republic for the [presumed] damage." *Id.*

Here, the Court should remit Plaintiff Holzgrafe's compensatory damages award because it is monstrously excessive, no rational connection exists between the award and the evidence, and the award is not comparable to those in similar cases. See *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 611 (7th Cir. 2006). Furthermore, the jury's verdict is against the clear weight of evidence and will otherwise result in a miscarriage of justice.

**VIII. The Punitive Damages are Constitutionally Excessive**

Plaintiff Holzgrafe's punitive damages award is constitutionally excessive under the Due Process Clause of the 14th Amendment to the U.S. Constitution. Unlike the case with compensatory-damage awards, there is no presumption of correctness concerning the amount of punitive damages. *Cooper Indus. Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 436 (2001).

13

Because constitutionally excessive punitive-damages awards rest on legal error, courts may order a reduction as a matter of law, without ordering a new trial. When determining whether a punitive damages award is constitutionally excessive, courts look to (1) the degree of reprehensibility of the defendants' conduct, (2) the disparity or ratio between the punitive award and the harm or potential harm suffered by the plaintiff, and (3) the difference between the punitive award and comparable civil penalties. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 (1996). The first factor is the most important, and courts use the following to determine a defendant's reprehensibility: (a) whether harm was physical as opposed to economic; (b) whether tortious conduct demonstrated indifference or reckless disregard to health or safety; (c) whether the target of the conduct was financially vulnerable; (d) whether the conduct involved was repeated or merely isolated actions; and (e) whether the harm was the result of intentional malice or deceit. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

Here, Defendant is entitled to a constitutional reduction in the award of damages because, on information and belief, Defendant did not cause Plaintiff Holzgrafe physical harm, did not engage in conduct that demonstrated indifference or reckless disregard for health or safety, and did not target a financially vulnerable individual. The conduct in question was also not repetitive, but rather involved isolated actions without any evidence of intentional malice (*i.e.*, ill will as distinct from constitutional malice) or deceit. In light of these circumstances, the punitive damages awarded are not justified by the degree of reprehensibility of Defendant's actions. Thus, the disparity between the punitive award the potential harm far exceeds acceptable limits. Moreover, on information and belief, there is evidence to suggest the jury's punitive award is punishing Defendant for harm caused to Plaintiff Holzgrafe's wife, which constitutes an independent ground for a reduction. *Philip Morris USA v. Williams*, 549 U.S. 346, 349 (2007).

14

Furthermore, on information and belief, the trial lacked any substantive testimony regarding Defendant's financial status, which is necessary for an appellate court to review a challenge to an award of punitive damages under Illinois law. See *Stump v. Swanson Dev. Co.*, LLC, 2014 IL App (3d) 110784, ¶ 65, 5 N.E.3d 279, 293; *Powers v. Rosine*, 2011 IL App (3d) 100070, ¶ 13, 956 N.E.2d 583, 586; *Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1189 (7th Cir. 1992).

Despite this absence, and on information and belief, characterizations of Defendant as a "disgruntled, spoiled rich kid" were prevalent, improperly influencing the jury's perception and contributing to the excessive punitive award. Evidentiary deficiencies and prejudicial narratives compromised trial fairness and punitive damages calculations.

## IX. Potential Juror Misconduct and/or Impartiality

Counsel has been informed of incidents that raise concerns regarding juror misconduct and/or impartiality, which may provide an independent basis for post-trial relief. For example, a juror may have engaged in misconduct or impartiality evidenced by her reaction to encountering certain trial attendees. This, and other incidents involving jurors, may have compromised the fairness of the trial, highlighting concerns regarding the integrity of the verdict. See *Remmer v. United States*, 347 U.S. 227 (1954); *United States v. Warner*, 498 F.3d 666 (7th Cir. 2007); *Artis v. Hitachi Zosen Clearing, Inc.*, 967 F.2d 1132 (7th Cir. 1992). This issue is noted to preserve it for further investigation; detailed analysis is contingent upon the availability of trial transcripts.

## CONCLUSION

Taken together, the number of errors that occurred at various points in the proceedings, before and during trial, resulted in a manifestly unfair trial. Therefore, Defendant is entitled to (1) judgment in Defendant's favor as a matter of law, (2) a new trial, or, alternatively, (3) remittitur.

Dated: May 10, 2024

Respectfully submitted,

**DENTONS US LLP**

By: /s/ Samuel Fifer

Kristen C. Rodriguez (IL# 6300697)
Samuel Fifer (IL #803006)
Stephanie S. Abrutyn (DC #434072)
Harrison M. Rosenthal (KS #28894)

233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
Phone: 312-876-8000
Fax: 312-876-7934
kristen.rodriguez@dentons.com
samuel.fifer@dentons.com
stephanie.abrutyn@dentons.com
harrison.rosenthal@dentons.com

*Counsel for Defendant, Daniel R. Lozier, II*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on May 10, 2024, the foregoing document was filed with the Clerk of the Court by operation of the Court's electronic filing system, which sent notification of such filing to the interested parties via electronic mail.

                                      */s/ Samuel Fifer*
                                      *Counsel for Defendant, Daniel R. Lozier, II*